## LECROY *vs.* WIGGINS.

[ACTION AT LAW FOR BREACH OF SPECIAL CONTRACT.]

1. *Construction of contract, as to rights and liabilities of parties, and measure of damages for breach.*—Plaintiff having built a mill on defendant's land, thereupon the parties entered into a written contract, containing the following stipulations : That plaintiff should "continue to keep the mill in good order, or by performing all the mechanical labor necessary to keep the machinery in good running order," should "receive for his services one third of the toll arising from said mill," and should "have the privilege of ginning his cotton and threshing his grain toll free;" that defendant should "continue to furnish the mill-seat, with all the necessary conveniences and appurtenances thereto, and all materials necessary for putting said machinery in order for running," should "at all times furnish a miller," and should be "entitled to two thirds of the profits ;" and that, if either party wished to sell his interest in the mill, he should "give the other the refusal of said interest." *Held,* 1st, that defendant's right to sell the mill-seat, with his interest in the mill, did not depend upon the plaintiff's assent to the sale, but upon his first offering plaintiff an opportunity to purchase it ; and, 2d, that the measure of damages, which the plaintiff was entitled to recover on account of an unauthorized sale by the defendant, was not the value of his labor on the mill at the time of the sale, but the value of one third of the toll, with the privilege of ginning his cotton and threshing his grain toll free, less the value of the services necessary on his part to keep the mill and machinery in running order.

2. *Relevancy of evidence to prove consent.*—Where the issue is, whether the plaintiff consented to a sale by defendant of a mill in which they were both interested, evidence showing that his consent was fraudulently procured is irrelevant.

3. *Parol evidence of contract within statute of frauds.*—Parol evidence cannot be received in reference to a contract which the statute of frauds requires should be in writing.

4. *General objection to evidence.*—When evidence is on its face *prima-facie* illegal, a general objection is sufficient to exclude it.

APPEAL from the Circuit Court of Autauga.

Tri. ˈ ˌefore the Hon. ROBERT DOUGHERTY.

THIS action was brought by Hosea Lecroy against John B. Wiggins, to recover damages for the defendant's breach of a written contract which was in these words :

"Articles of agreement between H. Lecroy and John B. Wiggins, 6th November, 1849. Now the above-men-

tioned parties are jointly and equally concerned in a certain mill and gin, as co-partners, to the following effect : Said Lecroy, of the first part, has built upon the premises a grist-mill and gin, and is to continue to keep said mill in good order, or by performing all mechanical labor necessary to keep said machinery in good running order, and shall receive for said services one third of the toll arising from said mill, and is to have the privilege of ginning his cotton, and threshing his grain, toll free. Said Wiggins, of the other part, is to continue to furnish the mill-seat, and all the necessary conveniences and appurtenances thereto, and is also to furnish all materials necessary for putting said machinery in order for running, and is also to keep, or cause to be kept, said mill by furnishing at all times a miller, and is entitled to two thirds of the profits arising from said mill. It is further agreed, that no additional machinery shall be added to said mill-seat, without the consent of both parties ; and in case that either party shall wish to sell his interest in said mill, the above-mentioned parties do bind ourselves, jointly and severally, to give the other party the refusal of said interests, and, in the event that they cannot agree, they will refer the matter to disinterested persons to arbitrate."

The complaint set out this contract, and then alleged that, "although the plaintiff has complied with all its provisions on his part, the defendant has failed to comply with the following provisions thereof, to-wit : 1st, that said defendant, wishing to sell his interest in said mill, did not give the plaintiff the refusal of said interest ; 2d, that said defendant has not continued to furnish the said mill-seat, and all the necessary conveniences and appurtenances thereto, but, on the contrary, has evicted the plaintiff from said mill; and plaintiff has thereby been deprived of the receipts of one third of the toll received at the said mill, which was worth a large sum, to-wit, the sum of one hundred dollars *per annum ;* and also of the privilege of ginning his cotton, and threshing his grain, toll free, which privilege was worth a large sum of money, to-wit, the sum of twenty dollars *per annum.*"

Lecroy v. Wiggins.

The defendant filed six pleas, in substance as follows:

1. That after making the contract set out in the complaint, defendant sold his interest in said mill, with the consent of the plaintiff. 2. That defendant sold his interest in said mill, before the commencement of this suit, to one Thomas, with whom plaintiff afterwards entered into a contract to carry out the stipulations contained in the contract declared on, and released and discharged defendant from the performance of said contract. 3. That plaintiff agreed, in consideration that defendant would sell his interest in said mill to Thomas, to discharge defendant from the further performance of said contract, and to form a contract with said Thomas in reference to said mill; and that defendant accordingly sold out his interest in said mill to Thomas, and, up to the time of said sale, well and truly performed all his part of said contract. 4. That the land, on which said mill was situated, belonged to defendant; and that defendant sold his interest in said land and mill, after having given the refusal of the same to the plaintiff, who failed and refused to purchase it. 5. That defendant well and truly performed all the stipulations of said contract on his part to be performed. 6. That defendant continued to furnish said mill-seat, and the necessary conveniences and appurtenances thereto, and plaintiff continued to receive and have the benefit of the same so long as he desired, until said mill and gin were afterwards, before the commencement of this suit, destroyed by fire.

On the trial, as appears from the bill of exceptions, the plaintiff offered in evidence the contract set out in the complaint, and the defendant's subsequent deed to Thomas, which was dated February 8th, 1853. He further proved, that he kept the mill in good running order, up to the time of the sale to Thomas; and that the mechanical work on the mill, at the time of the sale to Thomas, was worth $550. "Thomas testified, that when he bought from defendant, he assumed no obligation to permit plaintiff to have anything to do with the mill, except at his own pleasure. There was no evidence that defendant offered to plaintiff a refusal of the purchase of his interest

in the premises. There was evidence tending to show that plaintiff desired to trade with defendant for his interest. Defendant offered evidence tending to show that plaintiff knew of the trade for the mill-seat being carried on between defendant and Thomas, and made no objection to it, but said that he was glad of it, as Thomas would furnish better materials if he bought it, and would enable him to build a better mill. Plaintiff offered to prove, that defendant told him, before the trade was made, that if he sold to Thomas, Thomas should execute articles of agreement in his favor, such as existed between him and defendant; but the court sustained an objection to this evidence, and excluded it; to which plaintiff excepted. Plaintiff then offered to prove, that after the sale to Thomas, he went to him with a written instrument," (which is made an exhibit to the bill of exceptions, and which contains stipulations similar to those contained in the contract between plaintiff and defendant,) "and requested Thomas to sign it; and that Thomas refused to sign it. The court sustained an objection to this evidence, and excluded it; to which plaintiff excepted. It was shown that the mill and mill-seat were situated on the land described in defendant's deed to Thomas. The defendant asked said Thomas, what interest he bought when he traded with Wiggins. The plaintiff objected to this question, but the court overruled the objection, and allowed the question to be asked; to which the plaintiff excepted. The witness answered, that he only bought defendant's interest. The plaintiff moved to exclude the answer from the jury, but the court refused to exclude it, and the plaintiff excepted."

"The plaintiff asked the court to instruct the jury, that if they believed from the evidence that plaintiff built the mill; and that his labor on it was worth $550 when it was sold; and that he kept it in good running order while defendant owned it; and that defendant afterwards sold the mill and mill-seat, with no reservation of plaintiff's rights; and that plaintiff knew of said sale, and was only willing that defendant might sell if he could have the same arrangement with Thomas that he had with defendant;

and that Thomas, in fact, had made no such arrangement, and refused to do so,—then the plaintiff was entitled to recover the value of his labor that was on the mill when sold. The court refused to give this charge, and the plaintiff excepted."

In consequence of these adverse rulings of the court, the plaintiff was compelled to take a nonsuit, which he now moves to set aside; assigning for error all the rulings of the court to which, as above stated, exceptions were reserved.

ELMORE & YANCEY, for the appellant.

MORGAN & MARTIN, *contra.*

WALKER, J.—The charge refused by the court asserts, in effect, the following proposition : The plaintiff, having built the mill described in the contract, and discharged the duties devolved upon him by the contract, may recover the value of his labor on the mill at the time of the sale, if the defendant, making no reservation of the plaintiff's rights under the contract, sold the mill to Thomas, and the plaintiff, knowing of the sale, was only willing that defendant should make it, provided he (plaintiff) could have the same arrangement with Thomas which existed between him and the defendant, which arrangement Thomas refused to make. This charge assumes the existence of the contract; and there is no impropriety in the assumption, because an admission of it is implied from the pleadings. The charge makes the defendant's liability result from a sale, when the plaintiff was willing to it only upon a certain condition which did not exist. Whether or not the liability does result from a sale under such circumstances, depends upon the question of plaintiff's right to sell without the consent of the defendant. The contract provides, that either party, wishing to sell "his interest," shall give the other the "refusal of said *interest*, and, in the event they cannot agree, they will refer the matter to disinterested persons to arbitrate." From this clause of the contract we understand, that the parties intended to reserve to themselves respectively a right to

sell their respective "interests," provided the party desiring to sell should first give to the other an opportunity to purchase, at a price upon which they might agree, or, if they could not agree, at a price which might be fixed by disinterested persons, chosen for that purpose. Under this stipulation of the contract, either party might sell, after having discharged his duty in affording the other an opportunity to purchase, of which he did not avail himself. It follows, that the defendant's liability does not result from the mere absence of the plaintiff's consent to the sale, nor from the breach of the condition upon which that consent was given. The proof that the plaintiff consented to the sale only upon the condition that he could make the same arrangement with the defendant's vendee which he previously had with the defendant, and that plaintiff was unable to make that arrangement with such vendee, would be a successful reply to the plea that the plaintiff assented, but not to the other matters of defense.

The charge asked also lays down, as a measure of the recovery, the value of the plaintiff's "labor that was on the mill when sold." The injury to the plaintiff by a sale, when he had been for some time receiving the benefit of the contract, was the value of the rights under the contract of which he was deprived by such sale. We do not think the plaintiff took by the contract an interest in the freehold of the land upon which the mill was situated. His interest was a mere right to such use of the mill, access to it, and occupation of it, during the continuance of the partnership, as were necessary to enable him to discharge the duties imposed, and to receive the benefits provided for him, by the contract. The defendant, who was the owner of the land upon which the mill was situated, had the power, by a sale of the land, to transfer the mill to the ownership of a third person. This sale and consequent transfer would necessarily terminate the partnership. The mill, the entire subject-matter of the partnership, was gone by the sale.—See Collyer on Partnership, 100, § 115; Story on Partnership, 438, § 307. If the partnership was dissolved by the sale of the defendant in violation of his contract, the plaintiff loses all the bene-

fit which he would have derived from the partnership had it continued in pursuance to that contract. That benefit would have consisted in the receipt of one third of the toll, and "the privilege of ginning his cotton and thresh-ing his grain toll free," lessened by the value of the services of the plaintiff which would have been requisite "to keep the mill in good order" and "the machinery in good running order," and estimated upon the supposition that no additional machinery would be added. This is the measure of plaintiff's damages, if he has any right to recover at all. The value of his "labor on the mill" at the time of the sale is not necessarily the same with the value of the benefits and privileges above described; and therefore the charge was properly refused, on account of the incorrect measure of damages laid down in it.

The court did not err in excluding proof of defendant's statement to the plaintiff, that if a sale was made to Thomas, he would make the same agreement with the plaintiff which existed between the parties to this suit. This proof might have been competent under an issue as to whether or not the plaintiff's consent to the sale was fraudulently procured; but such is not the issue here. The defendant pleaded the plaintiff's consent. The record does not show any replication to the plea, or any issue taken on it. We cannot intend that the plaintiff replied to the plea of consent fraud in its procurement. Unless we could aid the appellant, by making through judicial intendment a replication for him, we could not hold the testimony offered relevant.

The defendant asked Thomas, his vendee, when testi-fying as a witness, "what interest he bought when he traded with the defendant." The witness answered the question, stating that "he only bought the defendant's interest." The plaintiff objected generally to the question and the answer, and excepted to the overruling of the ob-jections. If the evidence in this case had been merely illegal, because there existed written evidence of the same matter, it would have been necessary to have pointed out to the court the objection to it. The evidence was upon its face illegal, without reference to any extrinsic fact,

because it shows the character of a conveyance which the statute of frauds requires to be in writing. The rule is, that parol evidence is not admissible in reference to contracts within the statute of frauds.—4 Phillipps on Ev. (2 part, C. & H.'s notes,) 3 ed., 604, note 297. This evidence being *prima-facie* illegal, it was not necessary to specify the grounds of the objection, and the general objection was sufficient.—Cunningham v. Cochran & Estill, 18 Ala. 478; Davis v. State, 17 Ala. 415.

For the error in the admission of this last named evidence, the judgment of the court below is reversed, and the cause remanded.