# Culver *v.* Hill.

*Attachment for Rent; Pleas, Set-off and Recoupment.*

1. *Damages; general rule as to measure of.*—No question for judicial determination is more difficult than to lay down a general rule declaring the proper measure of damages in all classes of contracts; it is, however, a cardinal rule that the injury must be the natural and proximate result of the tort or breach of contract; accidental consequences, not likely to ensue from the wrong done, are generally too remote to be the foundation of a recovery.

2. *Same; measure of when tenant injured by landlord's failure to repair fences.*—When the landlord agrees, as part of the contract of renting. to repair the fences enclosing the demised premises, so as to secure the crop to be grown thereon, and fails to do so, the tenant may, in an action against him for the rent, set-off or recoup whatever sum he was damaged by reason of the landlord's failure to comply with his contract to repair the fencing.

3. *Same; landlord liable for, in such case, although tenant could have prevented injury.*—The landlord, in such a case, is liable for the damages consequent upon his failure to comply with his contract to repair, although the tenant could, by making or procuring rails at a comparatively small cost, have prevented the injury.

APPEAL from Henry Circuit Court.

Tried before Hon. H. D. CLAYTON.

This suit was commenced by an attachment for rent which was issued December 29th, 1879, against James R. Hill, at the instance of George V. Culver. The attachment was issued on the ground that the defendant had removed from the premises, rented by him from the plaintiff, part of the crop grown thereon, without paying the balance claimed to be due as rent. After the plaintiff's complaint was filed, the defendant pleaded : 1. That at the time the suit was begun the plaintiff was indebted to him in the sum of $150, by unliquidated demand, resulting from the breach of plaintiff's agreement to repair and make a fence around the rented premises, so as to secure defendant's crops from depredation by stock, which plaintiff agreed to do as part of the contract of renting, upon which he sued, and which he failed and refused to do, in consequence whereof, said fence being insecure the stock of the plaintiff, and other persons, broke in upon defendant's crops, ate up, damaged, and destroyed them to the value of $150, which he offered to set off against the plaintiff's demand, and claimed judgment for the residue. 2. "In short, by consent"—recoupment of damages. On the trial it was shown that defendant had rented certain lands

[Culver v. Hill.]

from the plaintiff for the year 1879; that the rent to be paid under the contract was 6,000 pounds of lint cotton; that plaintiff agreed, as a part of the contract, to repair the fences which enclosed the land, so as to secure the crops to be made thereon by the defendant. Plaintiff did make some repairs on the fences, and thereupon defendant took possession, and cultivated the land under the contract. It also appeared that the fences were broken down by stock, but no material damage was done to the crops until they had matured, when about forty bushels of corn and two bales of cotton were destroyed by the depredations of stock. The fencing around the land was not good, and not a "lawful fence," but was about as good as other fencing in the neighborhood; the stock broke over the fence in some six or seven places, which could have been repaired by the defendant for about fifteen dollars, so as to have prevented the stock from breaking through; but to do this the defendant would have been forced to procure rails and haul them three or four miles. The court, at the request of the plaintiff, charged the jury, in writing: that if they believed, from the evidence, that the defendant, Hill, could, by reasonable effort and expense, have kept said fence in repair, so as to have secured the crops from depredations by stock, and he failed to do so, defendant can not set-off or recoup any damages resulting to the crop from the failure to keep said fence in repair. This charge the court gave. The plaintiff then requested the court, in writing, to charge the jury: 2. "That, though the jury may believe, from the evidence, that damages resulted to the defendant from the depredations of stock upon his crop, grown on said rented lands, yet, such damages are too remote to be allowed as a set-off or by way of recoupment." This charge the court refused to give, and defendant excepted. The court, at the request of the defendant, charged the jury, in writing: "1. That if the jury believe, from the evidence, that plaintiff, as a part of the contract, agreed to repair the fence so as to secure the crop from depredations by stock and failed to do so, and that defendant used due diligence, in all other respects, in keeping up the fences and in keeping out the stock, except in making or buying rails and putting on the fence, then defendant is entitled to set-off against plaintiff's demand, or recoup, whatever sum he was damaged in consequence of plaintiff's failure to comply with his agreement in repairing said fences. 2. That if plaintiff's agreement was to repair the fence so as to secure the crops from depredations by stock, and he failed to do it, it was not incumbent on the defendant to make or buy rails, and make such a fence as would have secured the crops from depreda-

tions by stock. 3. That the finding of the jury should be in accordance with whatever they find from the evidence as to the contract of the parties." These charges the court gave, and the plaintiff excepted "to each giving of each charge." There was a verdict for the defendant. The errors assigned are, the refusal to give the second charge requested by the plaintiff, and giving the charges requested by the defendant.

James G. Cowan, for appellants.

W. C. Oates, for appellee.

Stone, J.—Hill became tenant of Culver, at a stipulated rent. The farm, the subject of the lease, was defectively fenced, and one of the terms of the letting was, that Culver, the landlord, "was to fix up the fencing enclosing said land, so as to secure the crop" to be made. The fencing was not sufficiently repaired, and much of the crop, after being grown, was destroyed by stock breaking in. The question is, whether the landlord is liable for the injury caused by the breaking in of the stock.

For breaches of warranty, or other contract in the nature of warranty, "the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, must be such as might naturally be expected to follow its violation."—*Passinger v. Thorburn*, 34 N. Y. 634. "Profits which would certainly have been realized, but for the defendant's default, are recoverable; those which are speculative, or contingent, are not."—*Griffin v. Culver*, 16 N. Y. 489. Damages which are the natural consequence of the breach of the covenant or contract, can be recovered.—*Dervint v. Willse*, 9 Wend. 325. "The plaintiff is entitled to such damages as necessarily and naturally flow from the act of the defendants."—*Jeffrey v. Bigelow*, 13 Wend. 518; *Marsh v. Webber*, 13 Min. 109.

Suit on covenant to teach two slaves of plaintiff the arts of ship-carpentry and caulking; which covenant, the declaration alleged, had been broken. It was proved that a slave, skilled in those trades, would thereby have his value increased three hundred dollars. Under the instruction of the primary court, the jury assessed the damages at six hundred dollars; thus taking, as the measure, the injury the plaintiff had sustained in not having his slaves so instructed. The revising court approved the rule on which the damages had been admeasured, and said: "If the defendants had performed their covenant, the plaintiff would have been benefitted, to that amount, in the increased value of each of his

[Culver v. Hill.]

slaves, and of that he was deprived by their default."—*Bell v. Walker*, 5 Jones' Law, 43; see, also, *Lord Sandes v. Fletcher*, 5 B. & Ald. 835; *White v. Mosely*, 8 Pick. 356; *Garrett v. Stuart*, 1 McC. 514; *Rose v. Beatri*, 2 N. & McC. 538.

The case of *Lecroy v. Wiggins*, 31 Ala. 13, grew out of a mutual executory agreement, which looked to future rights of enjoyment. Wiggins violated his part of the agreement, and rendered it impossible for Lecroy to realize the benefits of the contract. This court said: "The injury to the plaintiff by a sale, when he had been for some time receiving the benefit of the contract, was the value of the rights under the contract, of which he was deprived by such sale." In *Terry v. Eslava*, 1 Por. 273, plaintiff had paid defendant twelve hundred dollars to abstain from the use of certain cotton-presses, which contract defendant had violated. The Circuit Court instructed the jury, that the sum paid—$1,200—was the measure of plaintiff's right of recovery. This court said, the damages were to be estimated according to the amount of the injury sustained.

We have a class of cases where the rule is laid down, that in actions to recover for a breach of a covenant, or stipulation in a contract, the measure of recovery is the actual injury caused by the breach; and this is the general measure of damages for the breach of a contract.—*Garrett v. Logan*, 19 Ala. 344; *Miller v. Garrett*, 35 Ala. 96; *Kelly v. Cunningham*, 36 Ala. 78; *Drake v. Webb*, 63 Ala. 596, and authorities cited. In *George v. Cahaba & M. R. R.* 8 Ala. 234, this court said: "It is, perhaps, impossible to ascertain any one rule that will cover all classes of contracts, in regard to the damages which may be awarded to the injured party." We may add, we have encountered no question requiring judicial determination, which is more difficult to be defined, than a general rule, or set of rules, declaring the proper measure of damages, in the varying phases of the inquiry. That the injury must be the natural and proximate result of the tort, or breach of contract, is a cardinal rule. Accidental consequences, not likely to ensue from the wrong done, are generally too remote to be the foundation of a recovery.—1 Brick. Dig. 522–23, §§ 8, 22.

It is contended for appellant, that when Culver failed to repair the fence, according to contract, it was Hill's duty to do the work, or have it done; and that, in this action, he can only recover what it would have cost him to have the necessary repairs made. The case of *Murrell v. Whiting*, 32 Ala. 54, is cited in support of this view. That was a suit on a charter-party of a sea-going vessel, and the breach assigned was, that the charterer failed to furnish a cargo for the voy-

[Culver v. Hill.]

age, which the contract bound him to furnish. This court said : "In the absence of special circumstances to the contrary, the law makes it the duty of the master of such a ship as that of the plaintiffs, in case of the failure or refusal of the charterer to furnish the cargo as agreed on, to avail himself of the ordinary means, and of all proper opportunities, to obtain another cargo. * * * If, by performing that duty, the loss from the defendant's breach of contract would have been mitigated, the failure to perform it deprives the plaintiffs of the right to recover any damages or loss, which would have been avoided by its performance." The principle declared in this case, is a little variant from that settled in a kindred class of cases, where one, by executory agreement, binds himself to serve another for an agreed compensation. In such case, if the hirer, without justifiable cause, refuse to allow the laborer to perform his contract, the latter may continue to treat the contract as in force and binding, and, after the termination of the agreed term of service, or as the installments mature, may sue and recover as if he had performed his part of the agreement; with this qualification, that if, in the meantime, the employee has realized anything from his labor, or if he had an opportunity for employment and did not accept it, then the employer is entitled to a credit for the sum he thus realized, or might have realized.—*Fowler v. Armour*, 24 Ala. 194; *Wright v. Falkner*, 37 Ala. 274; *Davis v. Ayres*, 9 Ala. 292; 2 Greenl. Ev. 261a, and note ; see, also, *Meertief v. Strauss*, 64 Ala. 299. And, in such case, the burden is on the defendant to show that plaintiff had obtained, or could have obtained, employment, and declined it.

The present case, in its circumstances, is distinguishable from any we have been considering. Hill, the tenant, bound himself to cultivate and harvest a crop. This, under ordinary circumstances, would require his labor and attention pretty much the entire year. Culver, the landlord, it is shown, "was to fix up the fencing enclosing said land, so as to secure the crop." This was a contract of mutual stipulations ; and, from its terms, we are authorized to infer the fence was insufficient, and that, in the absence of Culver's promise to repair, Hill would not have taken the lease. Fence, *ex vi termini*, imports a defense or protection of the crop, or other thing within the enclosure. Protection was its object, and it was that the parties had in contemplation. Destruction or loss of the crop, if the fence remained insufficient, would naturally be expected to follow. We think the damage in this case was the natural and proximate result of Culver's breach of contract, that Hill had a right to repose

on his promise to repair, and that the Circuit Court laid down the true rule for the measurement of damages in such a case as this. In the first charge, given at the instance of plaintiff, the court extended to him the full measure of his rights. We agree with the Circuit Court in holding that it was not legally incumbent on defendant to make or procure rails to repair the fence, at the expense, or with the labor which the testimony shows would have been required. The diligence required of him did not extend so far.

Affirmed.