99   331
s112   88

# Danforth & Armstrong *v.* Tennessee & Coosa River Railroad Co.

*Action for Breach of Contract.*

1. *Joinder of counts for work and labor done under a contract, and for damages for breach of contract.*—When a party, under a contract, has, in part, performed his contract, and is wrongfully discharged or forced to abandon the work, he may sue upon the contract to recover the price agreed to be paid, for the work already performed, and may in the same suit declare for damages sustained by the breach of the other party in forcing him to abandon the work before its completion; the damages thus declared for being the natural consequences of the breach complained of.

2. *Signing bill of exceptions.*—A statute creating a City Court, that provides that ten days after the rendition of a final judgment in said court, such judgment shall be "as completely beyond the control of the court, as if the term of the court at which said judgment was rendered, had ended at the end of said ten days," does not limit the signing of the bill of exceptions to the ten days, next after judgment rendered in the City Court. The signing of the bill of exceptions is not a taking of control of the judgment by the court.—(*Stein v. Mc-Ardle,* 25 Ala. 561, overruled.)

3. *Depositions as part of a bill of exceptions.*—Depositions taken in a cause, different from documentary evidence used on the trial, are sufficiently identified, when referred to in the bill of exceptions by the names of the witnesses; and, when being so referred to, are transcribed in the bill of exceptions, they will be considered as parts thereof.

4. *Secondary evidence.*—When, on a trial, one of the parties fails to produce certain writings, after having been notified to do so, and it is shown that the originals thereof are out of the State, copies may be introduced.

5. *Written estimates of civil engineers; when inadmissible evidence.*—In an action by contractors for an alleged breach, in preventing the

completion of their contract, written estimates made by civil engineers, after work under the contract had been begun, can not be offered in evidence upon the inquiry of the profits the plaintiffs would have realized, if they had been permitted to perform their contract.

6. *Charges to the jury; obstruction of navigable streams.*—In an action for the breach of a contract, by which the contractors are required to remove a large quantity of solid rock lying on the bank of a navigable stream, it is shown that to blast this rock into the stream would be less expensive than to remove it elsewhere, but that such blasting into the stream might obstruct navigation, a charge that "under the law and Constitution of the State of Alabama, no one has the right t) obstruct a navigable stream in the State of Alabama," is not abstract, nor is it objectionable as assuming that the blasting into the stream would necessarily obstruct navigation.

7. *Same.*—A charge to the jury, that the plaintiffs in such case, in carrying out their contract, had no right to blast the rock into the river in such quantities as would obstruct the river and endanger navigation therein, is not erroneous, and should be given.

8. *Same.*—Charges that the plaintiffs could not recover any profits for rock which they had intended to blast into the river, if any, and that plaintiffs had no right to blast rock into the river, are properly refused, as assuming that to blast the rock into the river would obstruct navigation.

9. *Measure of damages; profits under a contract.*—When in an action for the breach of a contract, by the defendant preventing the plaintiffs from completing the work commenced thereunder, it is shown that if they had been permitted to complete the said work the plaintiffs would have realized a profit, the measure of damages recoverable is that sum which is shown would have been realized as profits, if they had been permitted to complete their contract.

10. *Same; charge to jury.*—An instruction that profits which would reasonably have been realized but for the defendant's default, are recoverable, but not those which were speculative, contingent, probable or remote, is erroneous, in making an improper use of the word "probable;" since reasonably probable profits might be recoverable.

11. *Same* —A charge to the jury forbidding the recovery of profits, "Unless the jury believe from the evidence that the profits claimed are certain," is erroneous ; reasonable certainty being sufficient to justify a recovery.


APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

This action was brought by the appellees against the appellants; and sought to recover damages for the alleged breach of a contract.

The contract which is the basis of the action is as follows : "Articles of agreement made this 25th day of May in the year 1888 between C. E. Danforth of New York City and R. T. Armstrong of Rome, Ga., under the firm name and title of Danforth & Armstrong, party of the first part, and the Tennessee & Coosa Railroad Company, a corporation organized under the laws of the State of Alabama, party of the second part, witnesseth : That for and in consideration of the payments hereinafter mentioned to be made by the party of the second part, the said party of the first part

doth hereby covenant and agree to construct and finish in a substantial and workmanlike manner, to the acceptance of the Chief Engineer of the party of the second part, and subject to all of the provisions of the specifications hereto annexed and endorsed 'The Tennessee & Coosa Railroad,' the work on that part of the said Tennessee & Coosa Railroad extending from Littleton, in Etowah Co., Alabama, to Huntsville, in Madison Co., Alabama, which work is contained in two general divisions known as Division A and Division B. Division A. being understood to extend from Littleton to a point on the old grade of the Tennessee & Coosa Railroad near Guntersville, where the line of the extension of said road to Huntsville leaves the old grade as now constructed. And Division B, being understood to extend from said point on the old grade near Guntersville to a junction with the tracks of the Memphis and Charleston R. R., in Huntsville as the same may be located by the Chief Engineer, and approved by the said Tennessee & Coosa Railroad Company. It is hereby mutually agreed and understood that the work to be done on Division A. shall consist of making all excavations of rock and earth required in the unfinished cuttings from section one to section four, inclusive, and from section twenty-one to section twenty-four, inclusive, and of all the masonry, timber work, drain pipe, culverts, on the whole of Division A, and does not include the clearing and trimming, repairing or finishing of the old cuttings and embankments. It is also hereby mutually agreed and understood that the work to be done on Division B. shall consist of constructing and performing all the work required to be done for completing the substructure ready for the track, except the work connected with the Tennessee River Bridge, and excepting the iron work where iron bridges shall take the place of wooden bridges. Wherever the word contractor is used in this agreement it refers to and indicates the party of the first part. Wherever the word Company is used, the party of the second part is designated. The contractor hereby agrees to complete the work contracted to be done on Division A, on sections one to four, inclusive, by September 1st, 1888, and on the whole of said Division A by November 1st, 1888, and on Division B, from its point of beginning with the old grade on Division A. to the Tennessee River at Guntersville, by December 1st, 1888, and from Aldrick Creek crossing to a junction with the Memphis & Charleston R. R. tracks in Huntsville by September 1st, 1888, and the whole of Division B, by December 31st, 1888. The work

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

shall be commenced within ten days after the contractor shall have been notified by the Chief Engineer that the same has been staked out and is ready, and shall progress in such parts of the work and at such times as the said Engineer may direct. The party of the first part agrees to perform the work specified according to the prices named within the following schedules, and in full compliance with all requirements of the contract and specifications.

### SCHEDULE OF PRICES ON DIVISION A.

| | | | |
|---|---|---|---|
| Earth Excavations | per cubic yard | $ 0 | 17 |
| Loose Rock Excavations | per cubic yard | 0 | 38 |
| Solid Rock Excavations | per cubic yard | 0 | 65 |
| First-class Masonry | per cubic yard | 9 | 00 |
| Second-class Masonry | per cubic yard | 8 | 00 |
| First-class Arch Masonry | per cubic yard | 11 | 00 |
| Second-class Arch Masonry | per cubic yard | 9 | 00 |
| Box Culvert Masonry | per cubic yard | 3 | 00 |
| Coping Masonry | per cubic yard | 15 | 00 |
| Slope wall Masonry | per cubic yard | 2 | 00 |
| Rip Rap Masonry | per cubic yard | 1 | 50 |
| Concrete Masonry | per cubic yard | 2 | 50 |
| Drain Pipe 15 inch per lin. foot | | 2 | 00 |
| Drain Pipe 18 inch per lin. foot | | 2 | 40 |
| Drain Pipe 24 inch per lin. foot | | 2 | 75 |
| Piles per lin. foot | | 0 | 30 |
| Timber in foundations per 1000 B. M | | 20 | 00 |
| Timber in wooden trestles per 1000 B. M | | 25 | 50 |
| Timber in wooden girders per 1000 B. M | | 21 | 00 |
| Wrought Iron per pound | | 0 | 05 |
| Cast Iron per pound | | 0 | 04 |

### SCHEDULE OF PRICES ON DIVISION B.

| | | | |
|---|---|---|---|
| Earth Excavations | per cubic yard | $ 0 | 18 |
| Loose Rock Excavations | per cubic yard | 0 | 39 |
| Solid Rock Excavations | per cubic yard | 0 | 78 |
| First-class Masonry | per cubic yard | 9 | 00 |
| Second-class Masonry | per cubic yard | 8 | 00 |
| First-class Arch Masonry | per cubic yard | 11 | 00 |
| Second-class Arch Masonry | per cubic yard | 9 | 00 |
| Box Culvert Masonry | per cubic yard | 3 | 00 |
| Coping Masonry | per cubic yard | 15 | 00 |
| Slope wall Masonry | per cubic yard | 2 | 00 |
| Rip Rap Masonry | per cubic yard | 1 | 50 |
| Concrete Masonry | per cubic yard | 2 | 50 |

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

| | |
|---|---|
| Drain Pipe 15 inch per lin. foot.................. | 2 00 |
| Drain Pipe 18 inch per lin. foot................ . | 2 40 |
| Drain Pipe 24 inch per lin. foot. ................ | 2 75 |
| Piles per lin. foot.......................  .............. | 0 30 |
| Timber in foundations per 1000 B. M.... .......... | 20 00 |
| Timber in wooden trestles per 1000 B. M.......  ..... | 27 75 |
| Timber in wooden girders per 1000 B. M........... | 21 00 |
| Wrought Iron per pound....................... | 0 05 |
| Cast Iron per pound........................... | 0 04 |

In consideration of a faithful performance of the conditions of this agreement by the party of the first part the party of the second part hereby agrees to transport all men, materials, machinery and supplies, required by the contractor in the performance of his work, free over the tracks of the Tennessee & Coosa Railroad, and to pay on or about the tenth of each month for ninety per cent. of the work, estimated by the engineer to have been done in the previous month at the rates named in the foregoing schedule, the remaining ten per cent. to be retained by the Company till the completion of the work.

[Signed.] "THE TENNESSEE & COOSA R. R. Co.
By E. A. QUINTARD, Prest.
DANFORTH & ARMSTRONG."

As is stated in the opinion, the pleadings and the rulings thereon are sufficiently shown in the report of the case when it was here on a former appeal. 93 Ala. 614. Such rulings of the court upon the evidence as are passed on in the opinion are sufficiently stated therein.

Among the charges given at the request of the plaintiffs, and to the giving of each of which the defendant separately excepted, are the following: (2. "The court charges the jury that if they believe from the evidence that the estimates made by W. H. Case, the Engineer of defendant on preliminary survey as to the character of the contents, whether more or less of earth, loose or solid rock; still if the jury further believe from the evidence that any portion of the line of the defendant's road has since been completed or partially completed and that said line so completed or partially completed was substantially on the preliminary line, then the jury can look to any evidence before them showing how much earth, loose and solid rock were moved in such completion, if there be such evidence before them, to determine how much of each kind, whether in earth, loose or solid rock, there were in said preliminary estimates."
(3.) "The court charges the jury that they can find a ver-

dict for the plaintiffs for damages or profits, if the preponderance of the evidence be on the side of the plaintiffs, if such evidence reasonably satisfies the minds of the jury of such damage or profits, although upon all the evidence there may be some uncertainty as to the amount of such damages or profits.".

The defendant requested the court to give the following written charges to the jury, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe from the evidence in this case that Danforth & Armstrong have failed to give such data or standard by reference to which the profits claimed of the defendant can be satisfactorily established or ascertained, then such profits would not be allowed, and your verdict on the matter of profits claimed would be for the defendant." (3.) "The court charges the jury that if the profits claimed by Danforth & Armstrong of the defendant by reason of the breach of defendant's contract are probable, uncertain, speculative and such as might be conjectured would be the probable result, if Danforth & Armstrong had complied with their contract, then the plaintiffs can not recover such profits." (5.) "The plaintiffs must establish the amount of their loss by evidence from which the jury will be able to estimate the extent of their injury, excluding all such elements of injury as are incapable of being ascertained to a reasonable degree of certainty by the usual scales of evidence, and if the evidence fails to do this, then your verdict must be for the defendant on the matter of the profits claimed by plaintiffs." (7.) "The court charges you that it is a well established rule of law that damages to be recovered for a breach of contract must be shown with certainty and not left to speculation or conjecture. Profits which would have been realized but for defendant's default are recoverable, those which are speculative, contingent, probable and remote are not recoverable. If the jury believe from all the evidence that the profits claimed by the plaintiffs are based upon probabilities, are uncertain and a matter of speculation, then such profits are not recoverable, and your verdict should be for the defendant." (12.) "Profits which would certainly have been realized but for the defendant's default are recoverable, those which are speculative, contingent, probable or remote are not recoverable." (15.) "If the jury believe from the evidence that Danforth & Armstrong, in carrying out their contract with the defendant, intended or proposed to blast rock from Deposit bluff on the bank of the Tennessee River, into the river, then the court charges you that Danforth &

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

Armstrong could not recover any profits for the quantity of rock that the jury believe from the evidence would have been blasted into the river." (16.) "If the jury believe from all the evidence in this case that the profits in this case constituted an element of the contract, then said profits can not be recovered unless the jury can estimate such with reasonable certainty. Such certainty as satisfies the mind of a prudent and impartial juror. If the jury believe from the evidence that the profits claimed are contingent, speculative and probable then they are not recoverable and your verdict should be for the defendant as to profits." (19.) "The court charges you that the law is that Danforth & Armstrong had no right in carrying out their contract to blast rock from Deposit bluff on the North side of the Tennessee River, in such quantities as would obstruct the river and endanger the navigation of the river." (22.) "The court charges the jury in this case that the plaintiffs had no right under the law to throw the rock or other material into the Tennessee River."

There was judgment for the plaintiffs, assessing their damages at $39,990. The defendant brings this appeal, and assigns as error the various rulings of the trial court.

R. C. BRICKELL, W. H. DENSON, WILLIAM RICHARDSON and THOS. H. WATTS, for appellant.—The signing of the bill of exceptions by the judge does not affect or modify the validity of the judgment rendered, and is the exercise of no control over the judgment. The provision of the special act (Acts 1890-91, p. 1092), does not refer to the signing of the bill of exceptions.—*Strader v. Alexander*, 9 Porter, 441; *Pool v. C. & M. R. Co.* 5 Ala. 237. Speculative and conjectural damages are not recoverable.—*U. S. v. Behan*, 110 U. S. 344; *Clements v. Beatty*, 87 Ala. 238; *Refining Co. v. Barton*, 77 Ala. 148; *Young v. Cureton*, 87 Ala. 727; Anson on Contracts (2d Ed., Am.), p. 410, note; 3 Brick. Dig., p. 293, § 8. The recovery in a case like the present one, must be limited to profits proved, exclusive of profits remote, conjectural, or dependent on contingencies, too uncertain to base a contract upon.—*Beck v. West*, 87 Ala. 213; 91 Ala. 312; *Union R. Co. v. Barton*, 77 Ala. 148; *Brigham & Co. v. Carlisle*, 78 Ala. 248; *Harper v. Weeks*, 89 Ala. 577; *Keeble v. Keeble*, 85 Ala. 552; *Clements v. Beatty*, 87 Ala. 238; *Snodgrass v. Reynolds*, 79 Ala. 452; *McPherson v. Robertson*, 82 Ala. 459; *Daughtery v. W. U. T. Co.*, 75 Ala., 168; *W. U. T. Co. v. Way*, 83 Ala. 542; *Bell v. Reynolds*, 78 Ala. 514; *Pollock v. Gantt*, 69 Ala. 373; *Burton v. Holley*, 29 Ala. 318;

22

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

*Higgins v. Mansfield,* 62 Ala. 267; *Street v. Sinclair,* 71 Ala. 110; 1 Sedgwick on Damages, 134-6 and note.

J. M. CHILTON, *contra.*—The bill of exceptions was not signed within the time allowed by law. Acts 1890-91, p. 1092. The first charge requested by the defendants invaded the province of the jury and was properly refused.—*Potter v. State,* 92 Ala. 37; *Jackson v. Robinson,* 93 Ala. 157; *A. G. S. R. R. Co. v. Hill,* 93 Ala. 516; 3 Brick. Dig. p. 113, §§ 109, 110. Profits that were reasonably probable could be recovered.—1 Sedgwick on Damages, 208; *Hammond v. Bussey,* 20 Q. B. D. 79. Charges in reference to the blasting of rock into the river were properly refused.—*Yarbrough v. Avant,* 66 Ala. 527; *Ware v. Curry,* 57 Ala. 274; *Johnson v. Smith,* 70 Ala. 108.

STONE, C. J.—This is the second appeal in this case.— 93 Ala. 614.

The Tennessee & Coosa Rivers Railroad Company was a corporation extending from Gadsden on the Coosa river, by or near Guntersville on the Tennessee river, to Huntsville. Part of the grading and other work preparatory for the superstructure had been done, but a very large part of the work remained to be done. On May 25th, 1888, Danforth & Armstrong, contractors, entered into a written contract with the corporate authorities of said railroad company to "construct and finish their said railroad," with certain specified exceptions. A copy of the contract is set out in the statement of facts accompanying this report of the case. It will be seen that the work undertaken by the contractors was of considerable magnitude. The contract specifies the scale of prices to be paid for each description or class of work to be done, and of the materials to be furnished, and declares the time within which the work on each of the sections was to be completed. Payments were to be made to the contractors, about the 10th of each month, of ninety *per cent.* of the value of the work done and materials furnished during the preceding month. The estimates for these several payments were to be furnished, and were furnished, by the engineers of the defendant corporation.

Except on a single question, there is very little conflict in the testimony shown in the record. That excepted question presents the inquiry, whether, if plaintiffs had completed, or been permitted to complete their contract, they would have realized a profit, and the extent of it. We say

this was the chief question of contest, for we are not informed by the record that the railroad corporation denied the making of the contract as set out, denied that the work was done in the months of June and July, as set forth in the estimates, or denied its default in making payment according to the estimates. As candidly stated by one of the counsel for appellants, "It is apparent the principal contention in the court below was as to the damages the plaintiffs were entitled to recover." And we may add, the brunt of this contention centered in the inquiry of profits the contract enabled plaintiffs to realize, if the contract had been completed.

The pleadings in this case, and the rulings upon them, are the same as were shown on the former appeal. 93 Ala. 614. That report shows a sufficiently full account of the pleadings and proceedings up to the formation of the issue for the jury. It states erroneously that the defendant demurred to the *ninth* count. The record shows it was the eighth. The grounds assigned were that that count was in case, whereas the action was assumpsit. There was also a demurrer to the whole complaint, for the misjoinder of counts. The trial court overruled the demurrer on all the grounds, and held the complaint good.

If count number eight stood alone as a cause of action, and on its own specific averments, without other aid, it may be a grave question whether it presents a grievance for which assumpsit would lie. It may be that case would be the proper action, if any could be maintained.—*Mobile Life Ins. Co. v. Randall,* 74 Ala. 170; *Williams v. Stillwell,* 88 Ala. 332; *White v. Levy,* 91 Ala. 175; *Cap. City Water Co. v. City of Montgomery,* 92 Ala. 866. But that count does not stand alone on its specific averments. It adopts a large part of count No. 6, which sets forth a copy of the contract. It employs this language: Plaintiffs and defendant "had entered into a contract and performed work and labor, and furnished material as set forth in count No. 6 of this complaint, and the defendant had made the defaults therein stated." It is common knowledge, that to perform and execute the contract set out in count No. 6 would require a large force of hands and teams, and large expense in their subsistence; and to have them suddenly thrown out of employment would necessarily entail expense. One of the breaches set forth in count No. 6 is as follows: "The plaintiffs further allege that about the 20th of August, 1888, defendant further breached said contract in ordering the plaintiffs to cease their work on said road, and under said

contract; and plaintiffs did then and there cease their work, and have performed nothing since." We may add that count No. 6 is an elaborate special count, and sets forth all that plaintiffs had done under the contract, all the breaches charged to have been-committed by the defendant, and claims additional damages for being hindered and prevented in carrying out their contract. Considered in connection with the sixth count, and taking into the account the natural and necessary connection between the breaches charged and the injury complained of, and bearing in mind also the nature of the service undertaken to be performed, we hold that the damages claimed in this count are so much a consequence of the breach charged, that they can be recovered in an action of assumpsit. In thus holding, we only follow what was said when the case was formerly before us.—93 Ala. 614; *Culver v. Hill,* 68 Ala. 66; *Pollock v. Gantt,* 69 Ala. 373; *Vandegrift v. Abbott,* 75 Ala. 487; *Brigham v. Carlisle,* 78 Ala. 243; *Horton v. Miller,* 84 Ala. 537.

A motion is made to suppress the bill of exceptions, on the alleged ground that it was not signed in time. The judgment was rendered September 12, 1891, and the bill of exceptions was signed November 30, 1891. That session of the court was opened July 6, 1891, and continued in session until thirty days before the next term. The next term commenced its session January 4, 1892, and thirty days before that time would be December 5th, 1891—five days after the bill in this case was signed. See act creating City Court of Gadsden, Sess. Acts, 1890-91, p. 1092, § 5.

It is contended, however, that under section 27 of the act, p. 1102, the session of the court must be regarded as closed at the end of ten days after the judgment was rendered, and that consequently a bill of exceptions can not be sealed after that time, without a legal order of the court extending the time. *Stein v. McArdle,* 25 Ala. 561, is relied on in support of this contention.

In *Johnson v. Washburn,* 98 Ala. 258, we considered this question in connection with *Stein v. McArdle, supra,* and refused to be governed by that authority, or to follow it. We adhere to what we there said, and overrule the motion to suppress the bill of exceptions.

Depositions taken in a cause, and filed in court, stand or a very different footing from documentary evidence, or other private writings used on the trial. They belong to the file, are in the custody of the clerk, and it would seem to be next to impossible for him to mistake their identity. It would appear to be as unlikely that the clerk would commit a mis-

VOL. XCIX.

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

take in the matter of a deposition taken and used in the cause, as that he would miscopy the pleadings. If it were a chancery suit, no evidence of identity would be required other than the register's entry on the note of the testimony, that the deposition of ———, naming the witness, was offered in evidence for complainant or defendant, as the case might be. They are not of the class of writings which were the subject of adjudication in *Parsons v. Woodward,* 73 Ala. 348; *Pearce v. Clements, Ib.* 256; *Moore v. Helms,* 77 Ala. 379; *Stapp v. Wilkinson,* 80 Ala. 47. We will treat the depositions as parts of the bill of exceptions, because we consider them sufficiently identified.

Very many questions were reserved during the introduction of the testimony, and to charges given and refused. We do not propose to notice in detail all the questions raised. We will endeavor to state principles which are decisive of every point reserved, so far as we consider there is any merit in them.

Plaintiffs were allowed to produce in evidence certain estimates proven to have been made by the engineers in the service of defendant. Some of these were estimates of work done and performed under the contract. Others were estimates of work which plaintiffs would be required to do and perform under their contract, if fully complied with. As we understand the language of the record, this latter class consisted of the engineers' estimates made prior to the letting of the contract, and made as part and parcel of the controlling factors in determining the location of the line of the road. It was objected to the testimony last mentioned, that it was left in doubt whether the testimony offered was the original, or merely a copy. In reply to this objection it was shown, first, that defendant had been notified to produce the originals, and, second, that said originals were out of the State. The City Court did not err in the rulings on this question.—1 Greenl. Ev., § 560; 3 Brick. Dig., 440, § 510.

Testimony of witnesses for defendant was offered, for the purpose, it would seem, of disproving the amount of profits plaintiffs would have realized, if they had performed, or been permitted to perform, all the stipulations of their contract. This testimony consisted, in part, of estimates made by civil engineers experienced in railroad construction. Their estimates were offered in evidence by defendant, and were excluded, on motion of plaintiffs. There was an exception reserved to this ruling.

The question raised by this ruling is entirely different from that last above considered. The estimates then under

consideration were those made in locating and finally establishing the line of the railroad. They were the act of the defendant itself, done in its service, as aids in the selection of the best, most practicable, and least expensive route, on which to locate and construct the road. They were manifestly a material factor, alike in letting and undertaking the construction of the road. They were specifications, made by the defendant, of the quality and probable quantity of the work and labor they were contracting to have done, and, no doubt, they entered largely into the terms of the contract agreed on. They were the defendant's description, as near as was then practicable, of the subject of the contract and its dimensions. The testimony offered by defendant had none of these qualities. It did not, and could not, enter into the making of the contract. It was *ex post facto*. It was, at most, a foundation for the differing opinion and judgment of experts, bearing on the inquiry of profits plaintiffs could have realized from a completion of their contract. It was simply reducing their oral testimony to writing, and having it placed in the hands of the jury, to aid them in understanding and utilizing it in making up their verdict. Now, while it is clearly the privilege of the jury, or any member of it, to take notes of the oral testimony as aids to memory, there is no provision of the law which authorizes the witness's memoranda of calculations, made to assist his own memory, to be placed before the jury, if objected to. It does not fall within any recognized rule on the subject. *Acklen v. Hickman.* 63 Ala. 494; *Jacques v. Horton*, 76 Ala. 238; *Stoudenmire v. Harper*, 81 Ala. 242; *Hancock v. Kelly*, *Ib.* 368; *Hart v. Kendall.* 82 Ala. 144; *Billingslea v. State*, 85 Ala. 323.

The contract which Danforth & Armstrong entered into with the railroad company required them to move a large quantity of solid rock on the margin of the Tennessee river. The testimony shows that this rock constitutes an abrupt or perpendicular bluff of considerable height, extending quite up to the water's edge, and that the survey and location of the railway, contracted to be built by Danforth & Armstrong, required that the roadway should be excavated through that rock for a considerable distance. The testimony shows, without conflict, that this service would require that the rock should be blasted, and that to blast it into the river would be greatly less expensive than to remove it to a distance. The estimates and testimony tended to show that the quantity of rock necessary to be gotten out of the way to construct the road-bed at this point would equal one

hundred thousand cubic yards, or more.   In estimating the profits Danforth & Armstrong could have realized from the completion of their contract, some of the calculations were based on the postulate that this 100,000 yards of solid rock could and would be blasted into the Tennessee river, and that the contractors would, in that way, be relieved of the burden and expense of removing it farther.   There was testimony tending to show that casting this rock, in the quantity proposed, into the river at that point, would tend to produce an obstruction to navigation.   The Tennessee river is a navigable water-course.   Under our Constitution—Declaration of Rights, § 25—it is declared, "That all navigable waters shall remain forever public highways, free to the citizens of the State, and of the United States."   See, also, Code of 1886, § 1459.   In section 4136 it is declared, that "any person obstructing a navigable water-course in this State must, on conviction, be fined not less than fifty dollars."

There were three charges asked by defendant, bearing on this question, and they were severally refused.   Charge 13 is in the following language :   "Under the law and constitution of the State of Alabama, no one has the right to obstruct a navigable stream in the State of Alabama."   There was, as we have said, testimony tending to show that the quantity of rock necessary to be removed in preparing the road-bed at the point under discussion, if cast into the river, might obstruct navigation.   The charge requested was, therefore, not abstract.   Neither was it objectionable on the score that it assumed, as a fact, that blasting the rock into the river would necessarily obstruct navigation.   It left that question to the jury.

It is manifest, alike from the testimony and from common knowledge, that to remove the rock entirely away would entail greater expense than to blast it into the river.   It might safely be said that the expense of removal would be much greater.   This, if found necessary, would inevitably reduce the profits Danforth & Armstrong could have made by the completion of their contract.   We hold that charges 13 and 19 asked by defendant ought to have been given, because they presented an element which properly entered into the inquiry of profits the plaintiffs could have realized from the full performance of their contract.   And it would not vary this question, even if the chief engineer instructed the contractors that they could blast the rock into the river.   This, because, first all men are bound to know the law ; and, in the second place, it does not appear that the engineer was authorized to make such declaration and thereby bind the corporation.

Charges 15 and 22, as asked, were properly refused. They assume, as matter of law, that to blast the rock into the river would obstruct navigation. That was an inquiry of fact which should have been submitted to the jury.

In actions for the recovery of damages, which it is alleged would have been realized by plaintiff but for the tort or breach of contract on the part of the defendant, no absolute, unbending rule can be laid down which will be applicable to every class of cases. Respect must be had to the violated duty, or breach of contract-obligation, which is the subject of complaint in the particular action. In *George v. C. & M. R. R. Co.*, 8 Ala. 234, it was said : "It is perhaps impossible to ascertain any one rule that will cover all classes of contracts, in regard to the damages that may be awarded to the injured party." So, in a class of actions brought to recover for a breach of contract, or stipulation in a contract, "the measure of recovery is the actual injury caused by the breach."—*Culver v. Hill*, 68 Ala. 66. That would seem to be the proper measure in this case. But many difficulties will present themselves in the application of this principle, and in the introduction of testimony in proof of such injury. "Among the general rules for the recovery of damages are the following : that they must be the natural and proximate consequence of the wrong done—not the remote, or accidental result. And special damages can be recovered only when they are not too remote, and are specially counted on and claimed in the complaint. What are termed speculative damages—that is, possible, or even probable profits, that, it is claimed, could have been realized but for the tortious act, or breach of contract charged against defendant—are too remote, and can not be recovered."—*Pollock v. Gantt*, 69 Ala. 373.

In passing on the case last cited, the nature of the wrong there complained of must be kept in view. It was charged in that case that, in consequence of an attachment wrongfully sued out and levied on a stock of merchandise, the business of the store was broken up, and the plaintiff thereby prevented from realizing profits from the continued business, which he could have realized if permitted to pursue his line of trade. Such possible, or even probable profits, we held, were too speculative and remote to be a basis of recovery in an action for damages. *Possible*, is that which may happen, or come to pass, while the preponderance of chances may be against its happening. We say of an event that it is *probable*, when the chances of its happening preponderate. Each of these categories, when predicated of a mercantile adventure,

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

and its prospective success, must, in the nature of things, be simply conjectural, or speculative. Such mere speculation or conjecture is too unsubstantial, too uncertain, to become a basis of judicial determination.

The case we have in hand rests on different principles. The *gravamen* of this feature of the present suit is, that plaintiffs were prevented from completing their contract by the wrongful act of the defendant, and that if they had been permitted to carry it out, they would have realized the profits claimed. Of course, the success or failure of this contention, this demand, must depend on the inquiry, whether the materials could have been furnished and the work done for less money than the prices specified in the contract. Any testimony of facts bearing directly on this pivotal inquiry would be competent testimony; and if, on a due consideration of all the evidence, the jury were reasonably convinced that plaintiffs would have realized a profit, then, to the extent they were so convinced, their verdict should have been for the plaintiffs, provided they had made good their charge that defendant had broken its contract. But the measure of recovery would be and was a different inquiry. Its extent would not necessarily be any particular sum. It would be that sum—no more—which the testimony reasonably satisfied the jury they would have realized as profits by completing the contract. And if the testimony reasonably satisfied the jury that some profits would have been realized, then, to the extent they were so satisfied, but no further, they should have allowed the plaintiffs damages on this feature of their complaint.

Of charges asked by defendant and refused, those numbered 3, 7, 12 and 16 were faulty, in that they sought to make an improper use of the word *probable*. Probability is enough to found a verdict on in a case like this, if it be supported by sufficient testimony to reasonably convince, and does reasonably satisfy the minds of the jury of the truth of the proposition contended for. *Mere* probability, by itself, is not sufficient. These charges were calculated to mislead, and were rightly refused for that reason, if for no other.

Several of the charges asked were correct in their main features, but, taken in their entirety, they were misleading. Charge 14 is in the following language: "The plaintiffs in this case can not recover profits for having been prevented from fulfilling their contract, unless the jury believe from the evidence that the profits claimed are certain, both in their nature and in respect to the cause from which they proceed." This charge is subject to criticism. The word

[Alabama Great Southern Railroad Co. v. Richie.]

*certain* has many shades of meaning in the law. Reasonable certainty is sufficient to found a verdict on in a civil suit. This charge was liable to mislead in another respect. Some of the counts claim very large damages — one hundred thousand dollars, or more. Under the rules we have declared, if the defendant violated its contract, and thereby prevented plaintiffs from realizing profits by its completion, the latter can recover all, or any part of the sum claimed, provided their proof reasonably satisfied the jury of the fact of such lost profits, and the amount of profits so lost. Not necessary to prove that their loss equalled the amount claimed. These remarks apply equally to charges 1 and 5, asked by defendants. Their tendency was to mislead.

A few words in reference to the charges given at the instance of plaintiffs. Charge 2 is probably miscopied, and we confess we do not understand it. It appears to be somewhat involved in some of its hypotheses. The record affirms that it contains substantially all the evidence, and we find no testimony in support of some of its postulates. We will not comment further on it, lest we do injustice. We decide nothing in regard to it.

Charge 3 is somewhat involved, and may need explanation. What we have said above in reference to the measure of proof, and the extent of the right of recovery will enable the court to lay this principle properly before the jury on another trial.

Reversed and remanded.