# Danforth & Armstrong *v.* Tenn. & Coosa Railroad Co.

*Action for Breach of Contract for Work and Labor.*

1. *Profits as damages.*—When a party enters on the performance of work under a contract, and is wrongfully forced to abandon it without fault on his part, he is entitled to recover damages for the breach; and "if profits formed a constituent element of the contract, their loss the natural and proximate result of the breach, and such as was reasonably in the contemplation of the contracting parties, and the amount can be ascertained with reasonable certainty, they are recoverable as damages;" but profits which are merely speculative, conjectural, or too remote, are not allowable.

2. *Damages for breach of contract.*—When the alleged breach consists in preventing the performance of work and labor by the plaintiff, after he had entered on the performance and was able and willing to complete it, his damages consist of two distinct items: (1) what he has already expended towards performance, less the value of the material on hand, and (2) the profits which he would have realized on complete performance, which profits are the difference between the cost of doing the work and the price agreed to be paid for it; and in estimating the cost, a deduction should be made for the time saved by the non-completion of the work, and release from the care, trouble, risk and responsibility attending full performance of the contract.

3. *Complaint; declaring for work and labor done, and damages for breach of contract.*—When a party has performed work and labor under a contract, and has been discharged without fault on his part, or forced to abandon the contract before completion, he may sue on the contract, and recover for the work and labor done according to its terms, and join counts for damages on account of the breach of contract, claiming profits which he would have realized, estimated as above.

4. *Provision in contract against sub-letting work.*—In a contract for the performance of work and labor in the construction of a railroad, a provision against the sub-letting of any part of the work without the written consent of the chief engineer is intended for the benefit of the railroad company, and may be waived by it; and proof of the facts that the engineer knew portions of the work were sub-let, directed the sub-contractors when and where to work, and made estimates of their work for the chief contractor, and that the president of the company, having knowledge of these facts, made no objection, is competent evidence to establish a waiver.

5. *Conflict between judgment-entry and bill of exceptions.*—When there is a conflict between the judgment-entry and the bill of exceptions as to a ruling on the pleadings, such as the allowance or dis-

[Danforth & Armstrong v. Tenn. & Coosa Railroad Co.]

allowance of an additional count to the complaint, the recitals of the former must control the latter.

6. *Pendency of former action.*—When two suits are brought for the same cause of action, the pendency of the first should be pleaded in abatement of the second, and a motion to strike it from the docket is not a proper remedy.

7. *Interest as damages* is the proper measure of recovery for the failure to pay money when it becomes due.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This action was brought by the appellants, suing as partners, against the Tennessee & Coosa Railroad Company, and was commenced on the 23d August, 1888. The original complaint contained only three counts, the first of which claimed $2,182.02, on an account stated between the parties on the 1st July, 1888; the second, $11,249.20, less the sum claimed in the first, on an account stated between the parties on the 1st August, 1888; and the third, $11,249.20, for work and labor done, and goods and chattels sold and furnished by plaintiffs to defendant during the months of June and July, 1888; and each of these counts was afterwards amended by adding the words, "less one-tenth of said amount, being ten per cent. which the defendant was allowed to retain under the contract." A fourth count was offered as an amendment, claiming $100,000 as damages for the defendant's breach of a written contract between the parties, which was made an exhibit to the count, and by which plaintiffs undertook and promised to do certain work and furnish the materials in the construction of a certain portion of the defendant's road-bed and track.

This contract, which was dated May 25th, 1888, and signed by both parties, specified with great particularity the different kinds of work to be done, the price to be paid for each kind, &c.; provided that the work should be done according to estimates furnished by defendant's chief engineer, and be approved by him; that payment for the work done and materials furnished during any one month should be made by the 10th day of the next month, but ten per cent. might be retained by the defendant until the completion of the work; and that plaintiffs should not sub-let any portion of the work, without the consent of the defendant's chief engineer, indorsed on the contract. The fourth count, as offered, alleged that, when the contract was entered into, the defendant knew that plaintiffs contemplated sub-letting a portion of the work, and that such sub-letting was necessary to effect the completion of the work within the time specified; that plaintiffs entered on the work about the 1st June, sub-let a portion of it, and continued to work until the 20th August, according to the estimates and

direction of the defendant's chief engineer, making reports and returns to him, which were duly approved for the months of June and July; that they were compelled to discontinue work and abandon the contract on or about the 20th August, because defendant failed to pay the stipulated compensation for the work done during the months of June and July, failed to pay its own current expenses, and suffered attachments to be sued out against its property; whereby plaintiffs have been prevented from completing the work they contracted to do, have been compelled to discharge their sub-contractors, have lost the profits which would have accrued from performance, and have been damaged in the sum claimed.

The defendant objected to the allowance of this count, (1) "because it presents an entirely new cause of action;" (2) "because it is a departure from the original complaint;" (3) "because it is in case while the original complaint is in assumpsit;" (4) "because it is the same as an independent cause of action for which another suit is now pending in this court between the same parties, which the court has refused to consolidate with this on plaintiffs' motion, and plaintiffs are now seeking to do indirectly what the law prohibits them from doing directly." The court refused to allow this count to be filed as an amendment, but on what ground the record does not show; and the judgment-entry further recites that a fifth count was offered and disallowed, though the bill of exceptions states that it was allowed.

The plaintiffs then filed seven additional counts, numbered from 6 to 12, inclusive, some of which claimed only the agreed compensation for the work done during the months of June and July; some, for the work done up to the 20th August; and others, for the profits which would have accrued to plaintiffs from the completion of the entire work. The defendant moved the court to strike out and disallow several of these counts, on the ground that they were in substance the same as other counts; and demurred to the ninth count, on the ground that it was in case, and made a misjoinder of counts, or causes of action. The court overruled the motion, the objections, and the demurrer.

The defendant had filed three pleas to the original complaint, namely : "the general issue, payment, and accord and satisfaction;" and after the allowance of the amendments to the complaint, again pleaded (1) the general issue, (2) "not guilty" to the counts numbered from 6 to 12, and two special pleas as follows : (3.) "To that part of the complaint, original and amended, which claims money due for work and labor done, goods, wares and merchandise sold, and money due on an

[Danforth & Armstrong v. Tenn. & Coosa Railroad Co.]

account stated," that plaintiffs, before the beginning of this suit, had assigned all their interest therein to O'Hearn Brothers, a partnership, and are not the parties interested in said money or claim; and this plea was verified by affidavit. (4.) "To the original complaint, and to all the counts added by amendment, and which claim or assert any right or claim for damages or profits, and for work and labor done, and for goods, wares and merchandise furnished, in building that part of defendant's road hereinafter named; and says that plaintiffs ought not to further maintain the same, because plaintiffs subcontracted the construction and building of that portion of the building of said road," describing it, "to Thomas Joseph & Co. and to Wentz & Purple, and these sub-contractors did all the work that has been done on that portion of defendant's said road; and that plaintiffs have been paid, since the commencement of this suit, $594.02 in full satisfaction, accord and settlement, for all claims, damages or demands they have or had against this defendant, by reason of, connected with, or arising from the work and labor performed, goods, &c., furnished, damages or profits arising from that part of the work done on defendant's road so sub-contracted to Thomas Joseph & Co.; and that plaintiffs have been paid, since the commencement of this suit, $460.59 in full accord, satisfaction and settlement for all claims, damages or demands they have or had against this defendant, by reason of," &c., the work performed by Wentz & Purple. The plaintiffs demurred to each of these pleas, assigning 12 separate grounds of demurrer to each, all of which were overruled; and the court also overruled a demurrer to the plea of not guilty.

On the trial, C. E. Danforth, one of the plaintiffs, testifying as a witness, stated that they commenced work under the contract on or about the 1st June, and continued to work according to the estimates of the defendant's chief engineer, and under his directions, until about the 20th August, when the work was suspended by order of the president of the railroad company, and it was never resumed; and he proposed to testify as to the amount of different kinds of work which they had done, what the agreed compensation would have amounted to, the quantity of work which remained to be done, and the profits they would have realized from the work when completed; also, that they had sub-let a portion of the work, with the knowledge of the chief engineer, and without objection on his part, to Thomas Joseph & Co., and another portion to Wentz & Purple, each of whom worked according to the estimates of said engineer, and made their returns to him. Each part of this evidence was excluded by the court, on objections

of defendant, and plaintiff excepted; and they also excepted to similar rulings excluding the testimony of J. F. O'Hearn, who had done work for plaintiffs under their contract. These exceptions are too numerous to be set out in detail, as they appear in the bill of exceptions.

The accounts for work done by Thomas Joseph & Co. and Wentz & Purple, sub-contractors, duly certified and verified by affidavit, were transferred in August, 1889, before the commencement of this suit, to Wm. Richardson, in consideration of $594.02 for the first, and $460.59 for the other; which sums were paid by Richardson's bank cheques in favor of plaintiffs. The cheque for the first claim stated that it was given "in full satisfaction of claim of Thomas Joseph & Co., and the interest of Danforth & Armstrong in said claim as original contractors with the T. & C. R. R., but shall not militate against any other claim said Danforth & Armstrong have against said T. & C. R. R. Co." At the bottom of the paper a receipt for payment was signed by Danforth & Armstrong. The other cheque, or order, purported to be given "in full satisfaction of the claim of Wentz & Purple *vs.* Danforth & Armstrong, original contractors, against Tenn. & Coosa R. R. Co." These several papers were admitted in evidence by the court, against the objection and exception of the plaintiffs.

The plaintiffs requested the following charges in writing, and duly excepted to the refusal of each :

(1.) "If the jury believe from the evidence that plaintiffs performed or had performed work on defendant's road for the months of June and July, 1888, and that such work was in accordance with their contract with defendant, and that such work was estimated by defendant's chief engineer, and certified to the defendant as to the amount and value of said work, and the amount so certified was due and unpaid at the commencement of this suit; and if they further believe from the evidence that defendant ordered plaintiffs to quit work under said contract, and failed and refused to pay them the amount certified by the chief engineer as due to them, and that plaintiffs quit work under said contract because of said order to quit and said refusal or failure to pay; then the jury will find for the plaintiffs the full amount due under the certified estimates of said chief engineer, and interest thereon to date from the time it was due, regardless of the reservation of ten per cent. provided for in said contract."

(2.) "If the jury believe from the evidence that plaintiffs performed or had performed work on defendant's road for the months of June and July, 1888, and that such work was in accordance with the contract between them, and that defend-

[Danforth & Armstrong v. Tenn. & Coosa Railroad Co.]

ant's chief engineer certified to defendant the work done, the amount and value thereof, and the amount so certified is unpaid; then they will find for the plaintiffs the amount so certified by said engineer, with interest thereon from the time it was due."

(3.) "Unless the amounts claimed to have been paid on the Wentz & Purple and Thomas Joseph & Co. claims were paid by defendant, such payments or amounts are no defense to this action, and their verdict will be for plaintiffs for all work shown to have been done on that division of the road."

(4.) "The mere receipt of a part of a claim is no satisfaction of it, unless there is an agreement to release the balance; and if the jury find from the evidence that plaintiffs received the money shown by the receipts in evidence, without agreeing to release the balance, they are entitled to recover the difference between the amount of the receipts and the estimates for work done on said division of the road."

(5.) "Merely receiving part of a claim is no satisfaction of it, without an agreement to release the balance; and if the jury find from the evidence that plaintiffs received a part of the Wentz & Purple and Thomas Joseph & Co. claim, without agreeing to release the balance of the claim, they are entitled to recover the difference between what they received and the amount actually due for work on said division."

(6.) "If the jury believe from the evidence that any portion of the claims of Joseph & Co. and Wentz & Purple assigned to Judge Richardson was for work and materials done and furnished in August, then they can not allow such portion as a deduction from the amount they may find the plaintiffs entitled to recover."

(7.) "Under the evidence in the case, the jury can not allow any deduction from the amount the plaintiffs are entitled to recover, on account of any transfer or assignment of the claims of Joseph & Co. and Wentz & Purple, except the actual cash paid them as shown by their receipts offered in evidence."

The assignments of error are numerous, embracing all the rulings of the court on the pleadings and evidence, adverse to the plaintiffs, charges given, and refusal of charges asked.

JAS. AIKEN, DORTCH & MARTIN, and ABERCROMBIE & BILBRO, for appellant, cited *Beck v. West & Co.*, 87 Ala. 213; *George v. C. & M. Railroad Co.*, 8 Ala. 234; *United States v. Behan*, 110 U. S. 338; *United States v. Speed*, 8 Wall. 77; *Railroad Co. v. Howard*, 13 How. 307; *Masterson v. Mayor*, 7 Hill, N. Y. 61; *Hunt v. Oregon Pacific Railroad Co.*, 36 Fed. Rep.

[Danforth & Armstrong v. Tenn. & Coosa Railroad Co.]

481; 31 Fed. Rep. 869; 2 Suth. Damages, 522; 1 Sedg. Dam.
134, note; *McMaster v. New York*, 108 N. Y. 542.

WM. RICHARDSON, and DENSON & TANNER, *contra.* (No brief
on file.)

COLEMAN, J.—Where one party, in compliance with his
contract, enters upon its performance, and is wrongfully forced
to abandon it before its completion, without fault on his part,
he is entitled to recover damages for its breach. If profits
formed a constituent element of the contract, their loss the
natural and proximate result of the breach, and such as was
reasonably in contemplation of the contracting parties, and the
amount can be estimated with reasonable certainty, such cer-
tainty as satisfies the mind of a prudent and impartial person,
they are recoverable as damages. On the other hand, if profits
are merely speculative, conjectural, or too remote, they are not
allowable.—*P. W. & B. R. R. Co. v. Howard*, 13 How. (U.
S.) 526; *Beck v. West*, 87 Ala. 218; *Brigham v. Carlisle*,
78 Ala. 248; *Bell v. Reynolds*, *Ib.* 513; 1 Sedgwick on
Measure of Damages, 134–6, and note. "If the breach consist
in preventing the performance of the contract, without the
fault of the other party, who is willing and able to perform it,
the damage of the latter consists in two distinct items,
namely: *first*, what he has already expended towards per-
formance, less the value of the materials on hand; *secondly*,
the profits he would realize by performing the whole contract."
*United States v. Behan*, 110 U. S. 344; 7 Hill, 69.

Where the proof fails to show that a profit would have been
realized, the recoverable damages consist in the reasonable
expenditures made, and loss of time, less the value of the
material on hand. If the proof shows that profits would have
been realized, had the party not been prevented from per-
forming the contract, they are recoverable, and the measure of
profits as damages is the difference between the cost of doing
the work and the price agreed to be paid. In estimating the
cost of doing the work, the less time engaged, a release from
the care, trouble, risk and responsibility attending a full exe-
cution of the contract, should be considered and included in
the estimate.— *U. S. v. Speed*, 8 Wall. 84; *Masterson v.
Brooklin*, 7 Hill, 62, *supra;* 13 How. 343; Sutherland on
Damages, 525; *McMaster v. State of New York*, 108 N. Y.
556; *Hunt v. Oregon Pac. R. R. Co.*, 36 Fed. Rep. 481;
*George v. C. & M. R. R. Co.*, 8 Ala. 234.

The contract sued upon in the present case specifies with
great particularity the price to be paid for excavation of earth,

[Danforth & Armstrong v. Tenn. & Coosa Railroad Co.]

loose and solid stone, timber and material for bridges, trestle-work and culverts, and for all materials to be furnished and work to be done. There is comparatively but little difficulty, under such a contract, in determining the price to be paid, and the cost of doing the work; and the difference between the two, which constitutes the profits, is recoverable as damages. The testimony of Danforth and of O'Hearn, tending to show this difference, was erroneously excluded by the court.

When a party has in part performed his contract, and is wrongfully discharged or forced to abandon the work, he may sue upon the contract, and recover the price agreed to be paid, for the work already performed, and may in the same suit declare for damages sustained by the breach of the other party in forcing him to abandon the work before its completion. By the terms of the contract, plaintiffs were to be paid monthly, less ten per cent. reserved until the completion of the contract, payable on the 10th day of each month, for the work performed the preceding month. Upon being wrongfully forced to abandon the work, without fault on their part, the plaintiffs were entitled to recover for the work done, including the ten per cent. reserved, at the contract price, and could declare in different counts for damages sustained by reason of the breach of the contract, and recover as profits whatever the proof would show they would have realized from the unfinished work.

It was competent for the defense to show payment and satisfaction for work done, and the receipts and transfers of claims to William Richardson were admissible for this purpose. These receipts did not cover the profits in the work which remained to be performed.

The contract provides that no work shall be sub-contracted without the written consent of the engineer in chief. This provision was intended for the benefit of the defendant. It was entirely competent to show the defendant waived this right or benefit, and for this purpose it was proper to prove by the chief engineer that he knew sub-contractors of plaintiffs were at work; that he, as chief engineer, directed them when and where to work, and that he estimated the work of the sub-contractors, and gave the estimates to plaintiffs, knowing that it had been done by sub-contractors for plaintiffs; and it was competent to show the president of the company was apprised of all these sub-contracts, and permitted the work to be done by them without objection.—*Badders & Britt v. Davis*, 88 . Ala. 367.

Although the bill of exceptions treats the 5th count as hav-

[Hembree v. Glover.]

ing been allowed by the court, the record of the judgment of the court shows that it wàs disallowed, and the record entry must prevail over the bill of exceptions.— *Courie v. Goodwin*, 89 Ala. 571.

Where two suits are pending for the same cause of action, the proper mode is to plead in abatement to the second suit the pendency of the other suit, and not by motion to strike the cause from the docket.  Count No. 4 was not objectionable for the reason assigned in the motion to strike it from the file, and the court should not have disallowed it, for causes specified in the motion.  We would not be understood as intimating that it was unobjectionable for other causes.

The measure of damages for the failure to pay money on the day it is due, is the interest which accrues thereafter. 11 Amer. & Eng. Ency. Law, 383; 104 U. S. 771.'

Plea No. 3 is not, and does not purport to be, an answer to the whole declaration, but only to so much thereof as seeks to recover for work and labor done.  To this extent the plea is good, and the demurrer thereto was properly overruled.

Plea No. 4 is not clearly drawn.  If it was intended to present a defense to a recovery of profits claimed by plaintiff for unfinished work on that part sub-contracted to Thomas Joseph & Co., and to Wentz & Purple, it is bad; for it only presents a defense to a recovery for the work done and profits thereon, and not to such as plaintiffs might be entitled to recover for the work he was prevented from performing.  The demurrer to this plea as drawn ought to have been sustained.

To notice each assignment of error would lengthen this opinion unnecessarily.  The court erred in the exclusion of testimony as indicated in the opinion.  The principles of law declared will be sufficient on another trial.

Reversed and remanded.