# Tennesse & Coosa Railroad Co. v. Danforth & Armstrong.

*Action for Breach of Contract.*

1. *Breach of contract; joinder of counts for work done and material furnished under a contract and for damages for breach, permissible.*— Where under a contract for work and labor and material, after the work has been partly performed, and the materials have been in part supplied by the party obligated thereto, he is prevented from completing the contract by the other party, he may, in one and the same

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

action, sue upon the contract for the contract price of the work already performed and materials furnished, and also for the profits he would have realized from the full performance of his undertaking had he not been prevented from completing the contract; and where in his original complaint he only sought to recover for work performed and material supplied according to the terms of the contract, he can, by a subsequent amendment of the complaint, add, without the introduction of a new cause of action, other counts claiming the profits he would have realized had not the defendant wrongfully prevented him from performing the work and furnishing the material under the contract.

2. *Pleading and practice; how objections should be raised to the addition of new counts in the complaint; consideration of question on appeal.*— The objection to the trial court allowing a new count to be added to the original complaint by amendment, should be raised by objecting to the allowance of the amendment at the time, or, the amendment having been allowed, by a motion to strike out the new count, and not by the request of charges which proceed on the idea that the recovery can not be had both on the original and added counts; and when on appeal such objection is sought to be presented only by exceptions to the refusal to give charges seeking to raise the question, it will not be considered.

4. *Action for breach of contract for the construction of a railroad; evidence of the cost of work already done admissible.*—In an action for the breach of a contract for the construction of a railroad, which the contractors, who are plaintiffs, were prevented from completing by the conduct of the defendant, where it is shown that a part of a certain class of the work contracted for has been already performed, which is of substantially the same character as that class of work to be done along the whole line, evidence of the cost of doing such part of the work is competent and admissible, as affording a fair and just basis for inferences to be drawn by the jury as to the cost of the work which the plaintiffs had contracted to perform, and as constituting a necessary factor in estimating the profits which the plaintiffs would have realized had they been allowed to carry out the contract; and the fact that it was contemplated by the plaintiffs that the work was to be done through sub-contractors, does not render such evidence incompetent, especially where the sub-contracts had not been entered into by reason of the breach by the defendant of the original contract, since the cost of doing the work already performed bore directly upon the feasibility of plaintiffs to make such sub-contracts, and as tending to show what profits would have been realized under the original contract.

4. *Same; admissibility in evidence of estimates by the defendant's engineer.*—In such an action the fact that the contract for the construction of the railroad provided that the estimates certified to by the engineer in chief of the railroad company should be accepted as correct, does not render admissible in evidence the *ex parte* estimates

6

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

made by another agent of the defendant for its own purposes; and where such estimates are unsworn to, they are mere hearsay evidence, and for this reason also incompetent and inadmissible in evidence.

5. *Same; right to recover unearned profits upon plaintiff's being prevented from carrying out their contract.*—In an action for the breach of a contract for the construction of a railroad, where the contract stipulated for monthly payments of a certain per cent of the contract price for work done 'the preceding month, if it is shown that upon doing a part of the work the payments stipulated for were not made by the defendant, there was a breach of the contract by the defendant, which, at the election of the plaintiffs, gave them the right to treat it as at an end; and if upon their electing to so treat it they called the fact to the attention of the defendant, and asked whether they should continue the work, intimating they would do so if the payments were made, the defendant told them, in effect to quit work, which was done, the plaintiffs were, in legal contemplation, prevented by defendant from completing the contract, and were, therefore, entitled to recover unearned profits.

6. *Same; evidence as to profits for uncompleted work; charge to the jury.*—Where in an action for the breach of a contract for the construction of a railroad, which the contractors, who are plaintiffs, allege they were prevented from completing by the conduct of the defendant, there is evidence tending to show the profits plaintiffs would have realized from their performance of the contract through sub-contractors, had they been allowed to proceed with the work, instructions requested by the defendant, upon the idea that there was no evidence adduced tending to show the amount of profits plaintiffs would have made had they been allowed to fully perform the contract, and hence no *data* furnished the jury upon which to assess damages as for such profits, are properly refused.

7. *Same; measure of damages as for unearned profits.*—In an action for the breach of a contract for the construction of a railroad which the contractors, who are plaintiffs, were prevented from completing by the acts and conduct of the defendant, the measure of plaintiffs' damages as for unearned profits is the difference between the price defendant had agreed to pay for the work and what it would have cost the plaintiffs to have had the work completed, either by themselves or through sub-contractors; and where it is shown that the work was to be done entirely by sub-contractors, but no sub-contracts had been entered into by reason of the breach of the original contract by defendant, and it is not shown at what price for doing the work the sub-contracts could or would have been made, in estimating the damages as for unearned profits, it is necessary to consider all contingencies and uncertainties, such as bad weather, sickness of laborers, accidents and the like, which might affect the price at which the sub-contracts could have been let.

8. *Navigability of a stream defined; obstruction thereof.*—The navigable parts of a stream, the obstruction in any way of the free and unin-

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

terrupted use of which is unlawful, includes every part of a navigable stream from bank to bank and throughout the length of its navigability, which, at the ordinary stage of the water, is of such depth and of such accessibility, with respect to the current or main body of the stream, as to be capable of navigation by boat, or of valuable floatage in connection with the main body of the stream, either up and down or across, or from the main stream on to any particular part, thence on to the body of the stream ; and this is true, whether such part has ever been so used, or whether there is any present or anticipated necessity for so using it.

9. *Obstruction of navigable stream; when deposit of foreign substances therein not unlawful.*—It is not unlawful to deposit in a navigable stream foreign substances or bodies, provided they do not and will not, directly or indirectly, interfere with the use of any of the navigable parts of said stream, or in any way obstruct those parts of the stream which have always been and are at the time being used for the purpose of navigation, and which may be, in the judgment of witnesses, or as a matter of conclusive fact, necessary to the navigability of the stream.

10. *Same; rights of contractor.*—Where, by a contract, the contractors are required to remove a large quantity of solid rock lying on the banks of a navigable stream, they have a right to deposit the rock removed in accordance with their contract into such stream, provided it does not, in any way, obstruct the navigability of any part of the stream, as above defined.

11. *Action for the breach of a contract; when charges as to remote damages abstract and misleading.*—Where in an action for the breach of a contract, only proximate damages are alleged in the complaint and sought to be recovered and proved, charges instructing the jury that remote and speculative damages can not be recovered are both abstract and misleading, and are properly refused.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

This was an action brought by the appellees, Danforth & Armstrong, against the appellant, the Tennessee & Coosa Railroad Company, to recover for work and labor done under a contract for the construction of a railroad, and for damages resulting from an alleged breach of said contract.

The purposes of the case, the pleadings, and the material facts are substantially the same as were disclosed on the former appeals of this case, and found reported in 93 Ala. 614, and 99 Ala. 332. The facts pertaining to the rulings of the court, which are particularly reviewed on this appeal, are sufficiently stated in the opinion.

On the last trial of the cause in the court below, there

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

were verdict and judgment for the plaintiffs for $100,000. The defendant appeals from this judgment, and assigns as error the many rulings of the trial court to which exceptions were reserved.

WILLIAM RICHARDSON, AMOS E. GOODHUE, SMITH & WEATHERLY and JAMES C. BRADFORD, for appellant.— 1. The obligation in the contract to pay each separate monthly instalment for work done and materials furnished during the previous month, is a severable and distinct obligation, so that, on the defendant's failure to pay each instalment as it fell due, an action to recover it by the plaintiff would lie.—*Johnson v. Allen*, 78 Ala. 387 ; *Liddell v. Chidester*, 84 Ala. 508 ; *Ryall v. Prince*, 82 Ala. 264 ; 2 Sutherland on Damages, §§ 708, 713. The failure to pay any monthly instalment as the work progressed, and according to the contract, would not terminate the contract, unless the plaintiffs saw proper to so treat and regard it. They failing to so treat it, the contract continues, as to future work and payments, during the period stipulated for completion of the entire work. *Johnson v. Allen*, 78 Ala. 391 ; *Brigham v. Carlisle*, 78 Ala. 243 ; *Stewart v. Cross*, 66 Ala. 22.

2. The plaintiffs having elected to treat the contract as continuing and in force, by their original complaint claiming only the specific monthly instalments due for June and July work, and expressly disclaiming the reserved percentage retained by the defendant under the contract, they were conclusively bound by their election, as to their cause of action then existing.—Bishop on Contracts, §§ 784 ; 808 ; 6 Amer. & Eng. Encyc. of Law, 247 ; *Crow v. Boyd*, 17 Ala. 54 ; *Lehman v. Van Winkle*, 92 Ala. 447. The commencement of a suit is a conclusive election.—Bishop on Contracts, § 784 ; *Lehman v. Van Winkle*, 92 Ala. 447.

3. The counts added by amendment, and which were finally allowed, numbered from six to twelve, inclusive, introduced an entirely new cause of action, distinct and independent from, and inconsistent with, the cause of action stated in the original complaint.—*Smitherman v. Mahan*, 71 Ala. 563 ; *Law v. Pemberton*, 29 N. Y. Sup. 605 ; 1 Amer. & Eng. Encyc. of Prac. 564, § 7, note 5. The cause of action as presented in the first three counts composing the original complaint, and the distinct cause

of action as presented variously in counts six to twelve of the amendments could not have been joined originally in the same complaint so as to authorize a recovery in one verdict under both counts, the one being inconsistent with the other, for the reason that the one treats the contract, in its entirety, as existing and still in force, while the other treats it as abandoned by the defendant and broken.—2 Sutherland on Damages, § 713 ; *Dows v. Morrison*, 20 N. Y. Sup. 860 ; *Balch v. Wurzburner*, 29 N. Y. Sup. 62 ; *Diehl v. McGhie*, 2 Rawle (Pa.) 337 ; *Brodek v. Hirschfield*, 57 Vt. 12 ; *Burt v. Kinne*, 47 N. H. 361 ; *Mt. Washington Hotel Co. v. Redington*, 55 N. H. 386.

4. If, however, the amended counts legally admit of a recovery on proof of the allegations therein contained, it is submitted that there is a variance between those allegations and the proof in the case bearing upon the prevention of the work, or the compulsory abandonment of it by the plaintiffs.—*A. G. S. R. R. Co. v. Tapia*, 94 Ala. 226 ; *Harold Bros. v. Jones*, 98 Ala. 348 ; *Harold Bros. v. Jones*, 97 Ala. 637 ; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599.

5. As to the recovery of profits the following propositions are well sustained by repeated declarations of this court, namely :   (1.) Speculative profits, such as might be the probable result of an adventure defeated by a breach of the contract, the gains from which are entirely conjectural, can not be brought within the range of recoverable damages.—*Danforth & Armstrong v. R. R. Co.*, 93 Ala. 614 ; *Ib.* 99 Ala. 331.   (2.) Profits, to be recoverable, must form a constituent element of the contract, and their amount must be ascertainable with reasonable certainty, from established data.—*Harper v. Weeks*, 89 Ala. 577 ; *Lumber Co. v. Lewis*, 94 Ala. 626.   (3.) In estimating the plaintiffs' profits there should be a reasonable deduction for the release from care, trouble, risk, and responsibility attending a full execution of the contract. *Danforth & Armstrong v. R. R. Co.*, 91 Ala. 614.   For an instructive example as to what is a reasonable deduction in such a case, see *Insley v. Shepard*, 31 Fed. Rep. 869.

6. The Nourse estimates were inadmissible as evidence. They were made by a subordinate engineer, after the resignation of the chief engineer, without authority from the defendant, and after the plaintiffs had ceased work and abandoned the contract. By the con-

tract, estimates of work done, upon which payments were to be made by the company, were to be made by the chief engineer alone. The evidential value and probative force of engineer's certificates or estimates, depend alone upon the contract between the parties. *McGuire v. Rapid City*, 5 L. R. A. 752; *Wyckoff v. Meyers*, 44 N. Y. 143; *C., S. F. & C. R. R. Co. v. Price*, 138 U. S. 185; *Wallis Iron Works v. Monmouth Park Asso.*, 19 L. R. A. 456; *Newson v. Douglass*, 7 Harris & J. (Md.) 417; 16 Amer. Dec. 317; *Schuler v. Eckert*, (Mich.) 51 N. W. Rep. 198; 2 Sutherland on Damages, 519, 520. The estimates must be made by the engineer or person designated in the contract, and the authority can not be delegated or the estimates made by another.—*Wallis &c. v. Monmouth Park Asso., supra; C. &c. R. R. Co. v. Price, supra;* Wood on Railway Law, 998; Redfield on Railways, 438; *Nelson v. Columbian Iron Works*, 17 L. R. A. 851.

7. The testimony of O'Hearn and Ludwig, showing the cost at which O'Hearn Bros. had done work under their contract on certain sections of the road, was incompetent. The effect of this evidence was to establish a price at which other work on other parts of a road and under other conditions could have been done.—Reynolds' Stephens on Evidence, p. 18; *Carroll County v. O'Conner*, 35 N. E. Rep. 1006; *Connors v. Morton*, 160 Mass. 333; *Keystone Manfg. Co. v. Adams*, 151 U. S. 139; *Grant v. Raleigh & G. R. Co.*, 108 N. C. 462; 1 Greenl. on Evidence, § 52; *Cooper v. Gordon*, 23 S. W. Rep. 608; *Hill v. Syracuse, &c., R. Co.*, 63 N. Y. 101; *Carlton v. Hescox*, 107 Mass. 410; *Lincoln v. Taunton Manfg. Co.*, 9 Allen (Mass.) 181; *Carter v. Pryke*, Peak's Cases, 95.

8. The undisputed evidence shows that the rock necessary to be taken and removed from Fort Deposit Bluff, and which the plaintiffs would have had to deposit in the Tennessee River at that point, would have been either an unlawful encroachment upon the soil or bed of the river below low water mark, (*purprestures*), or an impediment to the navigation of the stream (nuisance), or both.—Gould on Waters, §§ 21, 48, 93, 167, 168; *Webb v. Demopolis*, 95 Ala. 116, s. c. 21 L. R. A. 62. And, generally, as to title of State of Alabama to soil of navigable waters below low water line, see the collection of Alabama cases in note 5, section 74, Gould on Waters.

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

Any obstruction of navigable waters is a public nuisance. *Walker v. Allen,* 72 Ala. 456; *Harold v. Jones,* 86 Ala. 274; *Georgetown v. Canal Co.,* 12 Pet. 91; Gould on Waters, §§ 91, 92; *Atlee v. Packet Co.,* 88 U. S. 389. "The general limitations upon the use of a public high-way are, that when it constitutes an obstruction to the highway, it must be of a partial and temporary charac-ter, justified by necessity and convenience, and in the ordinary and contemplated use of the highways." *Harold v. Jones, supra.* A riparian owner on a public navigable stream has not the right to erect a structure or place an obstacle, of a permanent nature, in the stream, intended solely for his own private purposes, and which may impede the free navigation of the stream; and such structure or obstacle is unlawful, *per se,* although a large and sufficient space in the channel is left for navigation, and although such structure or obstacle is so located next to the shore or bank as that it would be negligence for a pilot of a steamer to allow his vessel to strike it.—*Atlee v. Packet Co., supra; The Imperial,* 3 L. R. A. 234.

J. M. CHILTON, JAMES AIKEN and DORTCH & MARTIN, *contra.*—1. The defendants prevented the complainants from completing their contract. The failure to pay the 90 per cent. of the value of the work which was com-pleted the preceding month, constituted, in law, a pre-vention, and gave them the right to consider the con-tract at an end.—*Wharton v. Winch,* 140 N. Y. 287.

2. Most of the charges requested by the defendant, which were refused, were properly refused, because of their misleading tendency, and because of their want of clearness and precision. They needed explanation. The refusal of such charges is always proper.—*K. C., M. & B. R. R. Co. v. Webb,* 97 Ala. 157; *L. & N. R. R. Co. v. Hall,* 87 Ala. 708; *Smith v. Collins,* 94 Ala. 394; *Knowles v. Ogletree,* 96 Ala. 555; *B'ham Fire Brick Works v. Allen,* 86 Ala. 185; *Ala. Fer. Co. v. Reynolds,* 85 Ala. 19.

3. Whether the profits claimed are the direct and proximate result of the breach of the contract complained of, or whether they are so uncertain and speculative as to be too remote to be recovered, is a question of law for the determination of the court, and should not be sub-

mitted to the jury by instructions.—1 Brick. Dig. 337, § 25; 3 Brick. Dig. 107, § 8; *Pistole v. Street*, 5 Port. 64; *Pharr v. Bachelor*, 3 Ala. 237; *Stanley v. Bank*, 23 Ala. 653; *Wright v. Bolling*, 27 Ala. 259; *Thomason v. Odum*, 31 Ala. 108; *Price v. Mazange*, 31 Ala. 701; *Riley v. Riley*, 36 Ala. 496.

4. The court erred in not admitting in evidence the estimates of the engineer Nourse. Such estimates being made for the company and by an officer of the company, the evidence was admissible as declarations by an officer in the line of his employment.—Abbott's Trial Evidence, 50; *Bibb v. Hall*, 101 Ala. 79; *Mobile, &c. R. Co. v. Gilmer*, 85 Ala. 422; *Talladega Ins. Co. v. Peacock*, 67 Ala. 253; *Jones v. University*, 46 Ala. 626; *Thorington v. Gould*, 59 Ala. 462; *Ill. Cen. R. R. Co. v. Troustine*, 2 So. Rep. (Miss.) 255; *Morse v. R. R. Co.*, 6 Gray 450.

McCLELLAN, J.—This cause has been twice before in this court on appeals by the present appellant, the Tennessee & Coosa Railroad Co.—(93 Ala. 614 and 99 Ala. 331). We shall adhere to the opinions delivered on these former appeals in respect of those of the questions, now again presented, which were then considered.

On the first appeal, it was held, among other things, that where, under a contract for work and labor and materials, the work and labor has been done and performed in part and materials have been in part supplied, and after this the party obligated thereto has been prevented by the other party from doing and performing the remaining work and labor and furnishing the remaining stipulated material, he may in one and the same action sue upon the contract for the compensation provided for therein for his labor and material performed and furnished under it, and also for the profits he would have realized from a full performance and discharge of his undertaking had he not been prevented from such full performance and discharge by the other party.—93 Ala. 621. And we do not understand the correctness of this proposition to be seriously controverted as it is here reproduced from the former opinion. But it is said for appellant that when, as was the fact here, the plaintiff claims in his original complaint *under the contract*, and only an amount due for work and labor and materials performed and supplied according to its

[Tennessee & Coosa R. R. Co.. v. Danforth & Armstrong.]

terms, the only breach of the contract imputed to the defendant being his failure to pay for these items according to its stipulations, ·he cannot afterwards by *amendment* present another claim for profits which he would have realized for work and labor and material which the defendant wrongfully prevented him from performing and furnishing, because this would be to introduce a new cause of action by amendment which is not allowable. Now this is precisely the form this question assumed when the case was first here : the point was made in precisely this way—an objection to the addition to the original counts, for money due under the contract as performed in part, of a count for profits plaintiffs were prevented from making by not being allowed to fully perform the contract. So that, while what is said in the opinion would not necessarily cover the question, yet when regard is had to the record in that case it is clear that the contention now made by the appellant in this connection was there presented, and fully determined in favor of the appellees.

But beyond all this, the present record furnishes no basis for this contention : it does not arise, the point is not made so as to authorize us to pass upon it on the present appeal. It is a question of pleading, and for the decision of the court, not of fact for the jury. It should have been presented to the court in some appropriate way, by objection to the allowance of the amendment whereby the claim for profits was injected into the case, or, the amendment having been allowed, by a motion to strike out the new counts. This record shows no such objection or motion, nor any ruling by the court in settling the pleadings having any bearing on this matter. The defendant pleaded to all the counts, the general issue and several special pleas ; and upon the issues thus made the case was tried and submitted to the jury. On this state of the record, if the plaintiffs proved the averments of each count of the complaint, assuming the counts to have been good in and of themselves severally, and the defendant failed to make good its special defenses, plaintiffs were entitled to a verdict upon each count, or to a general verdict, wholly regardless of a misjoinder of counts, or of the fact that the original counts went upon the contract treating it as continuing, and the counts added by the amendment treated the contract as

having been brought to an end by the defendant, and claimed damages for not being allowed to fully perform and discharge it. So that both upon the former decision and on the case as now presented, apart from that decision, our conclusion is that the court properly refused the several charges requested by the defendant which proceeded on the idea that a recovery could not be had both on the original and added counts because the latter were inconsistent with, or. constituted a departure from, or, for any reason, were improperly joined to the former.

The testimony of O'Hearn and Ludwig to which defendant objected went to show the cost of doing certain classes of the work contracted for at one point on this line of·road, which was about sixty-six miles in length. These classes of work, the excavation and removal of earth, loose or broken rock and solid rock, were common to the whole line ; and the elements which went to make up the cost of the excavations were, in the main, the same along the whole line, leaving out of consideration in this connection the solid rock excavations contemplated to be done at Fort Deposit Bluff. There was some difference in the character of soil to be excavated at different places, being of a sandy and gravelly kind where O'Hearn had worked, red clay on another part of the road, and "white sticky" earth on another. It is contended in the briefs of appellant's counsel (and said *arguendo* in the abstract) that the cost of excavating sandy soil is something less than that of excavating red and white clay ; but we do not find this borne out by the evidence. To the contrary all of the witnesses for the defendant, except one, puts the cost of earth excavation on division A of the road, where O'Hearn worked in sandy soil, the same as on division B, where there was red and white clay ; and the one witness who makes a difference—McDonald, the engineer of the railway company which appears to have succeeded to the defendant's rights and liabilities in the premises—testifies that the cost of earth excavation is slightly greater on division A than on division B. And it is not contended that the cost of rock excavations, leaving out said bluff, was greater on other sections than it was where O'Hearn worked. It would seem to be clear, therefore, that all this testimony of O'Hearn and Ludwig as to the cost of the excavations made by the former

was relevant and pertinent to the inquiry as to the cost of this work per cubic yard all along the road, and afforded, fairly and justly, bases for inferences to be drawn by the jury as to the cost of the work which plaintiffs had contracted to perform. And the cost of doing the work was a necessary factor in estimating the profits which plaintiffs would have made had they been allowed to carry out the contract. If we assume plaintiffs were to perform the contract themselves directly and not through sub-contractors, such cost and the contract price to be paid plaintiffs were the two main factors in the estimate to be made by the jury. This we no not understand to be controverted; but appellant's counsel insist that inasmuch as it is made to appear in the case that plaintiffs had no intention of doing the work except through sub-contractors and had made arrangements only to that end, their profits would bear no necessary relation to the difference between the cost and the contract price of the work, but would be entirely represented by the difference between the prices fixed in the sub-contracts and those fixed in the contract in chief, and hence, it is insisted, evidence of cost is not pertinent. We may grant this proposition in the main without concurring in the conclusion just stated. While it is true that it was never in the contemplation of the plaintiffs to carry out this contract personally, but that they all along intended to have the work done and materials furnished by sub-contractors, and to that end had made all their arrangements, to such extent indeed that parties desiring to enter into such sub-contracts covering all but one mile of the road, were being negotiated with and were ready to enter into such contracts and go at once to work to perform them, yet it is also true that none of these contracts had been actually closed at the time the contract in chief is alleged to have been broken by the defendant, though the only reason they had not been made appears to have been that the work these persons proposed to do was not ready for them. Now, the fact that there was a wide or a narrow difference between the price the defendant had agreed to pay and the cost of doing the work bore directly upon the feasibility of plaintiff's closing these sub-contracts and having the work done by sub-contractors at a profit to themselves, the plaintiffs; and if this difference between cost and

price were shown to be very considerable the fact tended to show that plaintiffs, after allowing a fair profit to the sub-contractors, would still realize for themselves a profit under the contract in chief. Of course, this evidence was not sufficient by itself to authorize a verdict, because of itself it did not show what proportion of this difference plaintiffs would have received, but it was none the less pertinent and competent on that account when considered in connection with other evidence which we find in the case going to show, not exactly the proportions in which the defference between cost and price would have been divided between plaintiffs and their sub-contractors, but the gross profits the plaintiffs would have made, as we shall see further on. On these considerations, we conclude that the testimony of O'Hearn and Ludwig was properly received.

The statements of estimates made out and rendered by Nourse to the defendant were not admissible as evidence. By the terms of the contract, the estimates certified to by the engineer in chief, were to be accepted as correct, and were binding upon both parties, but this provision of the agreement did not include any other estimates. Those by Nourse were *ex parte,* and were made by him for the defendant as their agent, and for their own purposes. These statements were not sworn to, and fall within what is denominated hearsay evidence. They are of the same character as the reports of section foremen or engineers of railroads made of injuries and casualties which occur in operating trains, and which we held in the case of *Culver v. Ala. Midland R'y Co.,* 108 Ala. 330, to be inadmissible as original evidence. The court erred in the admission of these statements.

It is argued that the plaintiffs are not entitled to recover unearned profits because, as is insisted, the evidence does not show that they were prevented from carrying out and performing the contract by the defendant. This position is not well taken. There was evidence going to show such prevention in a legal sense. The contract stipulated for monthly payments of ninety per cent. of the contract price for work done the preceding month. A good deal of work—all it seems that defendant's engineer had allowed plaintiffs to proceed with—was done during the months of June, July and August. The payments stipulated to be made on July 10th for the June

work and on August 10th for the July work had not been made. For these breaches of the contract the plaintiffs had a right to treat it as at an end. They elected to so treat it; and the latter part of August they wrote to the defendant about this matter of delinquent payments and asked whether they should continue the work; the inference being that they would continue if the payments were made, or if they had assurance of the payments being made. And in reply the defendant telegraphed them in effect to quit work. If the jury should find these to be the facts, they would have been fully justified in' the conclusion that plaintiffs were in legal contemplation prevented from completing the contract by the defendant.

Again, it is insisted, and instructions were requested upon that idea by the defendant, that no evidence was adduced tending to show the amount of profits plaintiffs would have made if they had been allowed to fully perform the contract; and, hence, that no *data* was furnished the jury upon which to assess damages as for profits. There would be much force in this position if the case stood upon the testimony drawn out by the plaintiffs. But it does not. The defendant on the cross-examination of Danforth elicited the following statements: (1) that the cost of doing the work as to _which he had deposed, was the cost *to the plaintiffs*, Danforth & Armstrong; (2) that plaintiffs had made an estimate of their profits on the sub-letting of the work; and (3) that they estimated their profits on division A at $20,000 and on division B at $112,000, making a total of $132,000, "in addition to what was already due for work already done by sub-contractor O'Hearn on division A." The tendency of this evidence was to show the profits the plaintiffs would have realized from the performance of this contract through sub-contractors had they been allowed to proceed in this way with the work. The instructions requested by defendant bearing on this point were, therefore, properly refused.

But whether this evidence showed the amount of such profits to the reasonable satisfaction of the jury was for them to consider and determine. Very clearly on the undisputed facts, the measure of plaintiff's damages as for unearned profits was the difference between the prices defendant had agreed to pay them for the work

and what it would have cost them to have the work done by sub-contractors, affected, it may be, to some extent by the consideration that as the work was not done at all, plaintiffs were relieved from the care, responsibility and expenditure of time involved in looking after the sub-contractors : plaintiffs are clearly shown to have had no intention and to have made no arrangements to carry out their contract with the defendant otherwise than through sub-contractors. It is also shown without conflict that, while plaintiffs were in negotiations with third parties to do the work, and that such third parties were prepared and ready to enter upon it as soon as contracts with them were made, and, further, that such contracts had not been closed only because defendant's engineer was not ready for them to go to work, yet they had not at the time of the alleged breach of the contract by the defendant entered into sub-contracts with such third parties for the doing of that part of the work for which they now claim profits which they insist they would have made but for such breach. Now, assuming a conclusion on the part of the jury that the estimates deposed to by Danforth were based upon the prices plaintiffs would have paid sub-contractors, the fairness and reasonableness of such estimates on that basis, the credibility of Danforth's testimony in that behalf, were, of course, still open to the consideration of the jury, and they had a right to look at all facts and circumstances pertinent to the inquiry in adopting, scaling or rejecting Danforth's estimates. Ordinarily under an unperformed contract for work and labor of the kind stipulated for here, in estimating the profits which it is alleged would have been realized from a performance, every act and incident which under normal conditions would have attended upon the actual performance of the contract and affected the cost of doing the work must be taken into the account. Plaintiffs did not controvert this proposition on the trial below ; but they admitted as witnesses that in making the estimates of profits to which they depose, they did not take these things, the concomitants of a performance by them of the contract, into consideration, and they testify, and their counsel contend in argument, that these considerations were for the sub-contractors and not for them, and that however much accidents, explosions, sickness of

laborers, bad weather, &c., &c., might have increased
the cost to the sub-contractors of doing the work, they,
the plaintiffs, would be wholly unaffected thereby, since
their profit was represented by the difference between
the prices fixed respectively in the original and sub-con-
tracts, and this they would have received in any event.
This theory would be correct in the main in cases where
the work has been actually let to responsible sub-con-
tractors. But that is not the fact here. No sub-contract
had been in fact entered into, as we have seen, nor is it
shown at what prices for doing the specified work any
sub-contract could or would have been made. In mak-
ing the contemplated sub-contracts, the contingencies
referred to would naturally have found accommodation
in an increase of the price which the sub-contractors
would have insisted upon, a price to be nominated in
those contracts beyond the cost of doing the work with
all the conditions, auspicious and favorable, with a fair
profit to the middle men added; and such increase of
price would, of course, have gone to lessen the differ-
ence between the prices defendant had agreed to pay
plaintiffs and those plaintiffs had agreed to pay the sub-
contractors, and by so much to cut down plaintiffs'
profits. It is obvious, therefore, that the position of
appellees in this matter is untenable, and that, to the
contrary, the contingencies of bad weather, sickness, ac-
cidents and the like were factors to be considered in esti-
mating their profits, for the same reasons and to the
same extent they confessedly would have been material
and important had there been no expectation or inten-
tion of subletting the work. Charge 43, which is as
follows: "In determining whether the plaintiffs would
have realized profits if they had been permitted to exe-
cute the contract, the jury will take into consideration
the various circumstances which the proof may show
it would be necessary to include in order to estimate ac-
curately the cost of doing the work. For instance, such
as good or bad weather, sickness of hands, accidents by
explosions, and damages resulting therefrom. It would
not be proper for you, if you should conclude that the
plaintiffs were entitled to anything, to fail to give due
and proper weight and effect to all the contingencies,
uncertainties, and accidents that the proof may show
would, or might, affect or increase the cost at which

plaintiffs could have done the work," should have been given.

The public is entitled to the free, uninterrupted and unobstructed use of every part of a navigable river, from bank to bank and throughout the length of its navigability, which, at the ordinary stage of the water, is of such depth and of such accessibility with respect to the current or main body of the stream as to be capable of navigation by boats or of valuable floatage in connection with the main body of the stream either up and down or across the river or from the main stream onto any particular part in question, or thence onto the body of the stream ; and this whether such part has ever been so used and whether there is any present or anticipated necessity for so using it. Any obstruction of the navigable parts of such stream as thus defined is unlawful *per se*, whether such obstruction affects, one way or the other, those parts of the stream which only have always been and are at the time being used for the purpose of navigation, and which only may be in the judgment of witnesses, or as matter of conclusive fact, necessary to the navigation of the stream. This is not to say that foreign bodies or substances may not lawfully be placed between what are usually spoken of as the *banks* of the river. There may be between a bank of a river and the water at ordinary stage a strip of land such as would be termed a beach in speaking of tide waters ; and upon this foreign bodies or substances may be placed. Or there may be permanent shoals next the bank where the water is too shallow to admit of navigation. Or there may be next the bank water in and of itself of sufficient depth for navigation but lacking in navigable connection with the stream and lacking also in sufficient extent to be navigable waters dissociated from the stream. In all such cases foreign substances or bodies may be deposited, provided they do not and will not directly or indirectly interfere with the use of any of those parts of the stream which are navigable within the principles stated above. With this explanation of what was said on the last appeal as to it being a question for the jury whether the blasting of Fort Deposit Bluff into the Tennessee river would obstruct navigation, we adhere to that decision. The plaintiffs had a right to deposit the rock, then to be blasted, into the river, that is into the space

[Tennessee & Coosa R. R. Co. v. Danforth & Armstrong.]

between the banks of the river, provided it could be done, without obstructing—not the *navigation* of the stream as it always had been, was being and, even, probably always would be carried on but—the *navigability* of any part of the stream as we have attempted to define navigability. And we deem it unnecessary to pass upon the action of the court on charges requested in this connection, since the case is to be tried again whatever conclusion we might reach in that behalf, and what is here said will sufficiently advise the lower court of our views for the purposes of another trial.

Several of the charges refused to the defendant have reference to remote and speculative damages, and are to the effect that such damages are not recoverable, etc., etc. All these were properly refused. They were abstract and their only tendency would have been to confuse and mislead the jury. There was no question of remote or speculative damages in the case. No such damages were claimed in the complaint and no evidence was adduced in proof of such damages. The profits which the complaint counts upon were held on former appeals to be proximate damages, and recoverable if proved. There was a question on the last trial whether these proximate damages were proved. The charges under consideration fail to discriminate between remote damages and the *proof* of proximate damages; and their only possible effect in the case would have been to mislead the jury to disallow the proximate damages claimed, and which the evidence tended to prove, on the idea that they were speculative, though they might have been satisfied that the evidence established that they had been suffered by the plaintiffs. All these charges were bad for being abstract in a sense and in that they involved this tendency to mislead and confuse the jury.

We deem it unnecessary to discuss other rulings of the city court, further than to say we find no error in them, as what we have here said, together with the former opinions in the case, will sufficiently bring our views of the case to the attention of the trial court.

Reversed and remanded.

BRICKELL, C. J., not sitting.