# Wagar Lumber Co. *v.* Sullivan Logging Co.

## *Action for Breach of Contract.*

1. *Bill of exceptions; recital as to containing all the evidence.*—The recital in a bill of exceptions that it contains "substantially all the testimony," is the equivalent of the statement, and will be construed to mean, that substantially all the *evidence* is set out

[Wagar Lumber Co. v. Sullivan Logging Co.]

in the bill of exceptions, including documentary evidence as well as the parol testimony introduced.

2. *Action for breach of logging contract; competency of evidence:*—In an action for the breach of a logging contract, where a witness produces a map furnished by the defendant and used in the inspection of the land and timber, and which shows both the land from which the timber was to be cut and other lands, and he testifies to the amount of timber on all the lands shown by the map, it is competent for him to testify to the respective areas of the tracts owned by the defendant and others as shown by the map, as tending to show the amount of timber on the land in question; and the fact that in doing this he was asked about and stated the names of the other owners of lands shown by the map is of no consequence, so far as affecting the legality and competency of his testimony.

3. *Same; same; expert testimony.*—A witness who has been in the logging business 30 or 35 years, being an expert in respect of lumber timber, is competent to testify as to the physical characteristics of "merchantable timber" within the meaning of these words as employed in a logging contract; but he is incompetent to testify, in further definition of the phrase, that it means timber "fit to go on the market to be conveyed there and pay expenses;" since such characteristic, as further testified to, is not a correct criterion for determining whether certain timber is merchantable.

4. *Same; same.*—In an action for the breach of a logging contract, which required the plaintiff to deliver to the defendant from six to ten million feet of logs during the year, where the plaintiff contended that by reason of the defendant requiring the delivery of one million feet of timber each of the first six months, the plaintiffs were authorized to terminate the contract, testimony as to the character and capacity of the place of delivery is admissible in evidence as tending to show the impracticability of delivering one million feet per month.

5. *Same; when assignment of contract cannot be controverted.*—In an action for the breach of a contract, where the assignment of the contract sued on to the plaintiffs, as alleged in the complaint, is not denied by special plea as required by the statute, (Code of 1896, § 1801), the defendant cannot controvert the assignment as alleged for any purpose; and evidence offered therefor is inadmissible.

6. *Pleading and practice; right to withdraw plea within the discretion of the trial court.*—In an action for the breach of a contract which the complaint alleged was assigned to the plaintiffs, where the only pleas filed were the general issue, payment and recoupment, a motion made by the defendant, after the introduction of the plaintiffs' testimony, to be allowed to withdraw the plea

[Wagar Lumber Co. v. Sullivan Logging Co.]

of recoupment and file a verified plea denying the assignment of the contract sued on to the plaintiffs, is addressed to the sound discretion of the trial court, the exercise of which will not be reviewed on appeal.

7. *Evidence; memorandum; when use thereof by witness not permissible.* It is not permissible for a witness to use a memorandum made by another to refresh his memory, when it is not shown that the witness himself had knowledge of the correctness of such memorandum.

8. *Same; same.*—It is not permissible for a witness to refer to a memorandum made by him for the purpose of refreshing his *knowledge* of the items contained therein, no matter of memory being involved, and the items sought to be referred to not having been entered upon any recollection of any past fact, but from estimates based on his experience.

9. *Same; same; when entries in book inadmissible.*—Where entries in a book which are sought to be introduced in evidence are not shown to be correct, nor to have been made at or near the time the facts entered occurred. they are inadmissible in evidence.

10. *Same; when exceptions unavailing on appeal.*—Where a witness answers a question, notwithstanding the court sustains objections to it, an exception to the sustaining of the objection is unavailing on appeal, even though such ruling on the part of the trial court was erroneous.

11. *Action upon the breach of a logging contract; relevancy of evidence.* In an action for the breach of a logging contract, where the defendant filed a plea of recoupment, but did not claim in such plea anything for the cancellation of contracts in consequence of plaintiffs' failure to cut and deliver logs of specified lengths and sizes, evidence that the defendant was compelled to cancel contracts because plaintiffs failed to comply with instructions given them as to lengths, sizes, &c., of the logs to be cut and delivered, and that defendant would have made certain profits on said contracts had it not been thus prevented from filling them by the plaintiffs, is irrelevant to any of the issues in the case and inadmissible.

12. *Same; charge to the jury as to damages recoverable.*—In an action for the breach of a logging contract, a charge asserts a correct proposition which instructs the jury that if the defendant wantonly or carelessly and negligently interfered with, hindered or prevented the plaintiffs in endeavoring to carry out and performing the contract according to its terms to such an extent as to render the performance difficult and greatly decrease the profits, which plaintiffs would otherwise have made, such interference justified the plaintiffs in abandoning the contract, and entitled them to recover the damages actually sustained.

[Wagar Lumber Co. v. Sullivan Logging Co.]

13. *Same; construction of contract; charge to the jury.*—The provision in a logging contract that ten cents per thousand feet is to be held back each month "until the full completion of the contract, as a reserve for the faithful performance of the same," means that if the contractors wrongfully fail to perform the contract, the fund so reserved out of the price agreed to be paid for the logging contemplated, should not be paid to the contractors at all; and in an action by the contractors for the breach of such contract, a charge is erroneous and properly refused which instructs the jury that "no matter who broke the contract, the plaintiff is entitled to a credit for the ten cents per thousand feet withheld under the contract."

14. *Same; same.*—In such an action, a charge which instructs the jury that the defendant had the right to retain the stipulated amount for every one thousand feet of logs until the full performance of the contract, and if the plaintiffs failed and refused to deliver all the timber mentioned in said contract, "and were not prevented from so doing by defendant, then the plaintiffs can not recover the amount to be retained," is properly refused as having a tendency to mislead the jury, in that the defendant may not have *prevented* plaintiffs from going on with the contract in the sense the jury might have understood that word, and yet they might have been justified in abandoning the contract.

15. *Same; charge as to measure of damages.*—In an action for the breach of a logging contract, where the plaintiffs sought to recover as damages other items, as well as the profits which they would have made but for the defendant's acts in preventing the completion of the contract, charges requested by the defendant which limit the plaintiffs' recovery to the profits they would have made from their full performance, are properly refused.

APPEAL from the Circuit Court of Washington.

Tried before the Hon. WILLIAM S. ANDERSON.

This action was brought against the Wagar Lumber Co. by "M. R. Sullivan and F. W. Sullivan, as partners doing business under the firm name of Sullivan Lumber Company;" and sought to recover damages for the breach of a logging contract made by the defendant with one E. O. Sullivan and which contract it was alleged was, with the consent of the defendant, assigned to the plaintiffs. The contract sued on was executed July 1st, 1895, and was in words and figures as follows: "In consideration of the sum of two and 60-100 dollars ($2.60) per thousand feet, E. O. Sullivan agrees to cut

36

and deliver under the direction of the Wagar Lumber Company, or their agent, all the standing and down pine merchantable timber now owned by Wagar Lumber Company west of the Mobile & Birmingham Railway track and between Armstrong and Bassett creeks, excepting a strip of timber bordering on Bassett creek one-half mile wide. Logs to be delivered afloat from skidway near saw-mill at Wagar. Scale to be Doyle measure—inch and fractions off—scaler to be agreed upon by both parties; inch not to be taken off scale on logs 28 ft. and up long (F. L. W.). Payment to be made on the 10th day of each month for all logs delivered the preceding month, except 10 cents per thousand feet, which is to be held back until the full completion of the contract as a reserve for the faithful performance of the same. The Wagar Lumber Company agrees to take at least six million feet (6,000,000) of logs per year, and E. O. Sullivan agrees to get out this and any additional amount up to ten million feet (10,000,000), according to the desire of the Wagar Lumber Company. The Wagar Lumber Company agrees to notify E. O. Sullivan three (3) days ahead of the amount probably wanted for the next sixty (60) days. The Wagar Lumber Company agrees to furnish the rail, splices and spikes necessary to the carrying out of the above contract, also its present railroad that runs from the saw mill to about two-thirds of a mile beyond Flat Branch, also, locomotive and eight (8) cars, all of which are in the best condition. E. O. Sullivan agrees to construct, build, and extend, as surveyed, what is to be the main line, towards the Finley place, in a manner that will compare favorably with the railroad as now constructed. At the end of this contract the main line, road-bed, ties and rolling stock are to be delivered to the Wagar Lumber Company, in good serviceable and first class condition—absolute wear and tear on rail and rolling stock excepted. The railroad and all constructed branches and rolling stock is to be the full property of the Wagar Lumber Company. Said railroad and all branches constructed or to be constructed, also rolling stock may be used, controlled and operated by the Wagar Lumber Company the same as if fully in possession,—due regard being exercised not to

prejudice E. O. Sullivan in carrying out and fully and faithfully operating his contract; E. O. Sullivan constructing and using them only in order to carry out faithfully his contract." This contract was signed "Wagar Lumber Company, F. L. Wagar, E. O. Sullivan." It had on it the following indorsement: "For value received I hereby assign this contract to the Sullivan Lumber Company, this 1st day of Sept., 1895. [Signed.]                              E. O. SULLIVAN."

The complaint contained the common counts, and also two special counts assigning as breaches of the contract defendant's failure to furnish the locomotive and eight cars, and its failure to exercise due regard in operating said railroad and rolling stock so as not to prejudice plaintiffs in performing their part of the contract, and defendant's refusal to take any logs after July 1, 1896. The first special count further averred that there was 70,000,000 feet of logs on the land on July 1, 1895; that plaintiffs had cut and delivered 6,000,000 feet up to July 1, 1896, and that they could have made a profit of at least 50 cents a thousand feet on the balance of the timber had they been allowed to go on with and complete the contract. The second special count claimed special damages amounting to $1,652.78, for breaches of the conditions of the contract, omitting any claim for future profits.

The defendant pleaded the general issue and payment to each count of the complaint, and the following special plea of recoupment: "Third. Defendant for further answer to the first and second counts of said complaint says, that at the time said action was commenced the plaintiffs were indebted to it in the sum of ten thousand dollars ($10,000.00); for that, whereas, on towit, the 1st day of July, 1895, one E. O. Sullivan together with defendant entered into the contract of agreement in words and figures as set out in the first count of said complaint, and to which said count of said complaint reference is hereby made; and which said contract of agreement was by and with the consent of the defendant assigned by E. O. Sullivan to plaintiffs on the first day of September, 1895; and defendant alleges that it has been at all times since the execution and assignment of said contract or agreement ready, willing and able to carry out and per-

form all of the terms of said contract or agreement to be done and performed by it, but that plaintiffs wholly disregarding their agreement have failed and refused to perform the terms and conditions of said agreement, in this, that said plaintiffs during the time between the first day of July, 1895, and the 1st day of July, 1896, cut and delivered to defendant six million, eleven thousand, four hundred and forty-three feet (6,011,443) of logs ; that said quantity of logs so delivered by plaintiffs constituted the larger part of the timber to be delivered under the terms of said agreement, that was easily accessible to the logging railroad of the defendant, and the larger part of the timber to be delivered at a profit to plaintiffs under said agreement, and that the remaining timber which plaintiffs had agreed to deliver to defendant is more inaccessible and could be only delivered at much greater cost and expense ; and defendant alleges that plaintiffs well knowing these facts, have, since the 1st day of July, 1896, capriciously, arbitrarily, and without legal excuse failed and refused, though urged and requested by defendant so to do, to carry out its said agreement to deliver to the defendant the remainder of said timber mentioned in said contract of agreement ; and defendant alleges that subsequent to the making of said contract or agreement, and upon the belief that the same would be carried out in good faith by plaintiffs, defendant made extensive and expensive preparations for extending and enlarging its business, and entered into contracts with many persons and firms for the manufacture, sale and delivery of lumber, and by means of the failure of plaintiffs to carry out in good faith their said contract, the cost to defendant of procuring the logs and timber necessary to the execution of its said contracts for the manufacture and delivery of lumber has been greatly increased, and defendant greatly hindered and delayed and embarrassed in the prosecution of its business of manufacturing and selling lumber. And defendant further alleges that plaintiffs, between the 1st day of July, 1895, and the 1st day of July, 1896, while delivering to it the six million, eleven thousand, four hundred and forty-three feet (6,011,443) of logs wholly disregarded its said agreement to deliver according to the desire of the de-

fendant, and wholly failed and refused to comply with the wishes and instructions of the defendant in cutting and delivering said logs in designated lengths and sizes, and by reason of said failure of plaintiffs to comply with such instructions, defendant was put to great inconvenience, delay and increased cost in meeting its contracts for the manufacture and delivery of lumber in special lengths and sizes, and in meeting the general demand upon it for lumber designed for special and particular uses, all to the damage of defendant in the sum of ten thousand dollars ($10,000.00), which it offers to set off against the demand of plaintiffs, and claim judgment for the excess."

The evidence for the plaintiffs tended to prove every breach assigned and the damages claimed. The evidence introduced by the defendant tended to show that there had been no breach of the contract on its part, but that by reason of the failure of the plaintiff to carry out the contract on its part, it had been damaged as set forth in the plea of recoupment.

There was evidence introduced tending to show that at the time of the transfer of the assignment of the contract by E. O. Sullivan to it that Sullivan Lumber Company was a partnership composed of E. O. Sullivan, M. R. Sullivan and F. W. Sullivan. This evidence was excluded on motion of the plaintiffs, and the defendant duly excepted.

After the plaintiffs introduced their evidence, the defendant moved the court to allow it to withdraw its plea of recoupment, and to introduce, instead thereof, a sworn plea denying the assignment of the contract to the plaintiffs in this case as alleged in the complaint. The court denied the motion, and the defendant thereupon duly excepted. During the progress of the trial, numerous exceptions were separately reserved to the separate rulings of the court upon the admission and rejection of evidence, but the facts pertaining to these rulings are sufficiently stated in the opinion.

After the introduction of all the evidence, the bill of exceptions recites: "This being substantially all the testimony, the court charged the jury generally as to the law of the case, to which charge there was no exception by either party."

The court at the request of the plaintiff gave to the jury the following written charges ; and to the giving of each of these charges the defendant separately excepted : (1.) "If the jury find from the evidence that the plaintiffs were in good faith endeavoring to carry out and perform the contract according to it terms, and the defendant wantonly or carelessly and negligently interfered with and hindered and prevented the plaintiffs in such performance to such an extent as to render the performance of it difficult and greatly decrease the profits which the plaintiffs otherwise would have made, then, in such case, such interference was unauthorized and illegal, and would have justified the plaintiffs in abandoning the contract, and would have entitled them to recover such damages as they actually suffered by being hindered and prevented from performing such contract." (2.) "The court charges the jury that no matter who broke the contract, the plaintiff is entitled to a credit for the 10 cents per thousand withheld under the contract, if the jury believe from the evidence that it was withheld."

The defendant requested the court to give to the jury, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked : (5.) "The court charges you that under the terms of the contract sued on in this case the Wagar Lumber Company, defendant, had the right to retain 10 cents for every thousand feet of logs delivered by the plaintiffs until the full performance of the contract, and if you believe from the evidence that the plaintiffs, after the 7th day of July, 1896, failed and refused to go on with the performance of their contract to deliver all the timber mentioned in said contract, and were not prevented from so doing by defendants, then plaintiffs can not recover the amount so retained, and as to this you should find for the defendants." (8.) "The court charges the jury that in the event you should find that there has been a breach of the contract by the defendant, that the measure of damages to which the plaintiffs would be entitled is the difference between the contract price per thousand feet for delivery and the sum it would have cost the plaintiffs to deliver the logs ; and

[Wagar Lumber Co. v. Sullivan Logging Co.]

if you should believe from the evidence that the cost of delivering the remainder of the logs would equal or exceed the contract price per thousand feet, then you should find only nominal damages for the plaintiffs." (9.) "If the jury believe from the evidence that the defendant notified and requested the plaintiff to stop work under the contract on the 1st of July, 1896, and to take up the work again on the 1st of January, 1897, and to log one million feet per month for six months thereafter, and in that way complete the second year of the contract; and you further believe from the evidence that the plaintiff consented to do this, then that would not be a breach of the contract by the defendant and your verdict should be for it."

There were verdict and judgment for the plaintiff. The defendant appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

McINTOSH & RICH, for appellant.—The court erred in permitting the witness Sullivan to answer the question as to how much there was of the Wagar and Wells lands. The evidence relative to the quantity of the Wagar and Wells lands was wholly irrelevant and immaterial to any issue raised by the pleading, calculated to mislead and confuse the jury, and prejudicial to the appellant. The contract, for an alleged breach of which the suit was prosecuted, related entirely to the timber on lands "now owned by Wagar Lumber Company."—*Thrash v. Bennett*, 57 Ala. 156; *Trammell v. Hudmon*, 36 Ala. 235.

The court erred in sustaining plaintiff's objection to the question to the witness Sullivan as to who composed the Sullivan Logging Company. The plea of the general issue put in issue every material allegation of the complaint, one of which was that the defendant had assented to the assignment of the contract to M. R. and F. W. Sullivan, as partners, doing business under the firm name of Sullivan Logging Company. If the partnership was not composed as alleged there was a variance fatal to a recovery by plaintiffs, and any evidence pertinent to that inquiry was relevant and material.—*Edwards v. Rogers*, 81 Ala. 568; *McMillan v. Otis*, 74 Ala. 565; *Lee v. Wimberly*, 102 Ala. 539.

The court erred in denying the motion of defendant for leave to withdraw its special plea for recoupment and file a sworn plea denying the assignment of the contract as alleged in the complaint. The court had refused to allow the defendant to introduce evidence, under its plea of the general issue, in denial of the allegations of the complaint that the contract sued on had been transferred to plaintiffs by and with the consent of the defendant; and in order to meet the ruling and reasoning of the court the defendant offered, as it had the right to do, to amend its pleading by the withdrawal of the plea of recoupment and the filing of a plea denying the assignment. The statutes in regard to the amendment of pleadings have been and are very liberally construed, so that a trial on the merits may be secured.—*Beavers v. Hardie*, 59 Ala. 570; *Buckham v. Mastin*, 54 Ala. 122; *Mahan v. Smitherman*, 71 Ala. 563.

The court erred in giving charges numbered 1 and 2, at the instance of plaintiff. It may be conceded that if the appellant had prevented or made impossible the performance of the contract that the charge would have been warranted. But the charge as drawn goes much farther than this and treats the alleged carelessness or negligence of appellant as such a breach of the contract as to authorize its abandonment by appellee. If such breach was shown by the evidence, it was at most a breach in a minor particular that would have given appellee a right of action but not the right to abandon the contract and refuse further performance.—Anson on Contracts, 277; Lawson on Contracts, p. 477, § 438; Clark on Contracts, 676.

The court erred in refusing charges numbered 5, 8 and 9 requested by defendant. The parties, by the plain, unambiguous words of their contract, had fixed and declared the right of appellant to withhold ten cents per thousand feet until the full completion of the contract by appellee, and if appellee had refused, without fault on the part of appellant, to continue the contract, appellee had no right of recovery as to the amount withheld, and charge numbered 5 should have been given. Charges numbered 8 and 9 requested by appellant contained a correct statement of the law as applied to the

[Wagar Lumber Co. v. Sullivan Logging Co.]

evidence. The charge correctly concedes the proposition that every wrong imports a damage for which the party suffering it has a remedy. The burden of proof, however, was on the plaintiff to prove damage in addition to a breach of the contract by the appellant. If a breach of the contract was shown without more the appellee became entitled to nominal damages only.—Clark on Contracts, 695-6; *Adams v. Robinson*, 65 Ala. 586; *Trustees v. Turner*, 71 Ala. 429. It will scarcely be disputed that the proper measure of damages to be applied in this case was the difference between the price at which appellee had agreed to deliver the timber and the sum it would have cost to deliver it.—*Danforth & Armstrong v. Tenn. & Coosa R. R. R. Co.*, 99 Ala. 345; *S. & N. Ala. R. R. Co. v. Wood*, 71 Ala. 215; *Alexander v. Alexander*, 71 Ala. 295; *Lehman v. Warren*, 53 Ala. 535.

L. H. & E. W. Faith and Gregory L. & H. T. Smith, *contra.*—The statement in the bill of exceptions that it contained substantially all of the testimony is not the statement that such bill contained all the evidence.— *Allen v. Draper*, 98 Ala. 590; *Torrey v. Burney*, 112 Ala. 496; *Gazette Printing Co. Morss*, 60 Ind. 153; *Moore v. State*, 71 Ind. 497.

The court did not err in overruling the defendant's objection and motion to the answer of the witness Sullivan, as to what is meant by merchantable timber.—*Jones v. Anderson*, 76 Ala. 428; s. c. 82 Ala. 302; *Smith v. Aikin*, 75 Ala. 209.

There was no error in the court's overruling the objection to the evidence tending to show the character and capacity of the place of delivery of the logs.—*Rhodes v. Cleveland Rolling Mill Co.*, 17 Fed. Rep.426; *Dowling v. Blackman*, 70 Ala. 303; *Milliken v. Maund*, 110 Ala. 332; *Nat. Fertilizer Co. v. Holland*, 107 Ala. 412.

The evidence as to who composed the partnership of the Sullivan Lumber Company is irrelevant to any issue in the case. No plea has been filed by appellant drawing in question who composed the partnership of plaintiffs, or the assignment of the contract to appellees. On the contrary defendant's plea of set-off admitted, or rather averred, that plaintiff's firm was composed of M. R. and

F. W. Sullivan and that the contract had been assigned to plaintiffs.—Code of 1896, §§ 2770, 2772; *Moore v. Burns*, 60 Ala. 269.

The refusal of the court to allow the defendant to withdraw the plea denying the assignment of the contract sued on to the plaintiffs was within the discretion of the court and will not be reviewed on appeal.—*Walker v. English*, 106 Ala. 369; *Foster. v. Bush & Co.*, 104 Ala. 662; *Morris v. Beall*, 85 Ala. 598.

The memorandum sought to be used by the witnesses was not shown to have come within the rule in such cases.—*Stoudenmire v. Harper Bros.*, 81 Ala. 242; *L. & N. R. R. Co. v. Cassibry*, 109 Ala. 697, and cases cited.

The memorandum was made long after the transaction to which it refers and its use by witness was not permissible. The memorandum must have been made at the time of the transaction to which it refers, or so recently thereafter that it may be inferred that the matter was then fresh in the mind of witness.—*Howell v. Carden*, 99 Ala. 101; *Calloway v. Varner*, 77 Ala. 541; 7 Amer. & Eng. Encyc. of Law, p. 111. The memorandum to be used, should have been made by the witness himself. The bill of exceptions shows it was not made by the witness Wagar, but by appellant's bookkeeper.—7 Amer. & Eng. Encyc. of Law, p. 111.

The first charge requested by the plaintiff asserts a correct proposition and was properly given.—*Anvil Mining Co. v. Humble*, 153 U. S. 540; *Fall & Miles v. McRee*, 36 Ala. 61; *Mason v. Ala. Iron Co.*, 73 Ala. 270; *United States v. Smith*, 94 U. S. 214; *Clark v. United States*, 6 Wallace 543; *United States v. Mueller*, 113 U. S. 153; *Mints v. Sprout*, 18 Atl. Rep. 509; *McGregor v. Ross*, 55 N. W. Rep. 658; *Danforth & Armstrong v. Tenn. & Coosa R. R. Co.*, 93 Ala. 617, s. c. 112 Ala. 80; *McTighe v. McLane*, 93 Ala. 626.

The charges requested by the defendant, to the refusal to give each of which there was a separate exception reserved, were erroneous and had the tendency to mislead the jury.—*McGar v. Williams*, 26 Ala. 469; *Nesbitt v. McGehee*, 26 Ala. 748; *L. & N. R. R. Co. v. Webb*, 97 Ala. 315; *Steed v. Knowles*, 97 Ala. 574; *American Oak Extract Co. v. Ryan*, 112 Ala. 339.

[Wagar Lumber Co v. Sullivan Logging Co.]

McCLELLAN, C. J.—The bill of exceptions contains this recital: "This being substantially all the testimony, the court charged the jury," etc. The "testimony" here referred to embraces written as well as oral evidence. It is insisted that this recital is not the equivalent of a statement that the foregoing is "substantially all the evidence," that "testimony" does not include documentary evidence, and hence that this court cannot conclude that the substance of all the evidence is set out. This construction is too technical. The recital having, as it did, reference to documentary evidence as well as evidence proceeding from the mouths of witnesses, is to be construed to mean that substantially all the *evidence* is set out; and we will consider the case upon the assumption that the substance of all the evidence adduced on the trial is set forth in the bill of exceptions.

Witness, E. O. Sullivan, used in the inspection of the land and timber a map furnished him by the defendant. It sufficiently appears that this map covered the land from which the timber was to be cut and also other land. Having testified that there were 100,000,000 feet of timber on the whole tract shown by the map, it was of course proper for him to go further and say how much of this estimated timber was upon the defendant's land, and to this end it was not objectionable for the witness to state the respective areas of the defendant's and other land shown by the map; and that in doing this he was asked about and stated the names of the other owners is of no consequence. The court did not err in allowing the question: "How much of the Wagar and Wells land?" to be answered.

E. O. Sullivan was an expert in respect of lumber timber: He had been in the logging business for thirty or thirty-five years, and was, therefore, competent to testify as to the physical characteristics of "merchantable timber" within the meaning of those words as employed in a logging contract.—*Jones v. Anderson*, 76 Ala. 428, s. c., 82 Ala. 302. But when in further definition of the phrase he went on to say "that it is [timber] fit to go on the market, to be conveyed there and pay expenses," he exceeded his competency. It was not for him to say, that the defendant, entitled under the contract to receive "merchantable timber," was bound to

receive all timber for which a market could be found in which it could be sold at prices sufficient to cover expenses. "Merchantable timber" may in point of fact in a given case be either better or worse than such as is fit to go on the market, to be conveyed there and pay expenses; and that is not a correct criterion for determining whether certain timber is merchantable. The motion of the defendant to exclude the last clause of the answer should have been granted.

One theory of the plaintiffs was, that they were authorized to throw up the contract by the requirement of defendant that a million feet of timber should be delivered each of the first six months of 1897, when under the contract they were allowed twelve months to deliver six million feet. As tending to show the impracticability of delivering a million feet per month the testimony of Sullivan as to the character and capacity of the place of delivery, the locality of the skidways, the number of cars that could be simultaneously unloaded there, and the capacity of the pond into which deliveries were to be made, was properly admitted.

Under the pleadings in this case the assignment of the contract by E. O. Sullivan to M. R. and F. W. Sullivan, partners, doing business under the name of Sullivan Logging Company, and the ownership of plaintiffs of the contract so assigned, as alleged in the complaint could not be controverted for any purpose by the defendant. The evidence offered for the purpose of showing that the contract was in fact assigned, or belonged to M. R., F. W. and E. O. Sullivan was properly excluded. Code, §§ 1801, 1803.

The motion of defendant to be allowed to withdraw its plea of recoupment and for leave to file a verified plea denying the assignment of the contract to plaintiffs, coming at the time it did, was addressed to the discretion of the trial court. We will not revise the exercise of that discretion to the denial of the motion.

There was no error in the action of the court refusing to permit the witness, Wagar, to use as memoranda to refresh his recollection a statement written out by the book-keeper of the defendant, it not being shown that

the witness himself had any knowledge of the correctness of the statement.—*Stoudenmire v. Harper Brothers*, 81 Ala. 242.

The witness, Rice, was shown to be competent to testify as to the details of the cost of logging, such as was involved in the contract sued on. He had committed the items of such cost, as he had estimated them, to writing. The memorandum he had with him when testifying. He sought to refer to this memorandum for the purpose of refreshing his *knowledge* of the items. No matter of memory was involved. He had not made the figures upon any recollection of any past fact, "but from estimates based on his experience." It would seem that the court properly refused to permit him to refer to this paper. But whether so or not is immaterial here since without referring to the memorandum, he went on and gave the items of cost inquired about.

The book about which the witness, Owen, testified, and in which were entries made by him in respect of the days he claims he went out on the engine to inspect logs, was not shown to be correct as to such entries, nor does it appear that they were made at or about the time at which the facts to which they relate transpired. It was properly excluded.—*Stoudenmire v. Harper Brothers*, 81 Ala. 242.

The witness, E. D. Smith, answered the question: "What effect, if any, will the indiscriminate delivery of logs in miscellaneous lengths have upon the cost of manufacturing a special bill of lumber?" notwithstanding the court sustained an objection to it. Hence, defendant can take nothing by its exception to the court's ruling.

In its plea of recoupment the defendant claims nothing on account of the *cancellation* of contracts in consequence of plaintiffs' failure to cut and deliver logs in lengths and sizes as directed by defendant, its claim in that behalf being only that it was "put to great inconvenience, delay and increased cost in meeting its contracts." The proposed evidence of Little to the effect that contracts were cancelled by the defendant because plaintiffs failed to comply with instructions as to the lengths, sizes, etc., of logs to be cut and delivered, and that defendant would have made a certain profit on said

contracts had it not been thus prevented filling them by the plaintiffs, was not relevant to any issue in the case.

The court did not err in giving charge 1 requested by plaintiffs.—*Anvil Mining Co. v. Humble*, 153 U. S. 540, 551-2; *McTighe v. McLane*, 93 Ala. 626.

The court below fell into error in giving the second charge requested by plaintiffs. The contract contains this provision: "Payments to be made on the (10th) tenth day of each month for all logs delivered during the preceding month, except ten cents per thousand feet which is to be held back until the full completion of the contract, as a reserve for the faithful performance of the same." We construe this stipulation in respect of the reservation of ten cents per thousand feet to mean that if the plaintiffs wrongfully failed to perform the contract, that part of the price agreed to be paid for the logging contemplated by it—the logging of all the timber described in the instrument and in the manner therein prescribed— should not be paid to them at all. The charge in question renders this stipulation entirely nugatory, requiring, as it does, the payment of this reserve fund to plaintiffs even though the jury should find they had wholly abandoned the contract without justification. Support for the instruction is sought in the case of *Danforth & Armstrong v. Tennessee & Coosa Railroad Co.*, 93 Ala. 614; but the opinion in that case does not afford it. It was there held upon a like provision that the party against whom such a reserve fund is held was entitled to recover it "upon being wrongfully forced to abandon the work" contracted to be done.

Charge 5 refused to defendant is perhaps abstract in respect of the date after which plaintiffs ceased to perform the contract; and it has a tendency to mislead the jury in its use of the word "prevented." Defendant may not have *prevented* plaintiffs from going on with the contract, in the sense the jury might have understood that word, and yet have justified them in abandoning it.

Charge 8 refused to defendant was bad in limiting plaintiffs' recovery, if entitled to recover, to profits they would have made from full performance. The suit was

[Clements v. Motley.]

for other items as well as for profits. And charge 9 refused to defendant is open to like objection.

For the errors pointed out, the judgment is reversed. The cause will be remanded.